J-S24024-23

2023 PA Super 162

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                                     :               PENNSYLVANIA
                                     :
                  v.                     :
                                     :
                                     :
KELVIN MCLEAN                      :
                                     :
               Appellant       :      No. 176 MDA 2023

Appeal from the Judgment of Sentence Entered December 16, 2020
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s):  CP-22-CR-0006639-2018

BEFORE:   BENDER, P.J.E., LAZARUS, J., and STEVENS, P.J.E.[*]

OPINION BY LAZARUS, J.:                **FILED SEPTEMBER 07, 2023**

      Kelvin McLean appeals *nunc pro tunc* from his judgment of sentence, entered in the Court of Common Pleas of Dauphin County, after a jury convicted him of one count each of statutory sexual assault,[1] corruption of minors,[2] and unlawful contact with a minor.[3]  We conclude the trial court properly denied McLean's motion to suppress DNA evidence taken pursuant to court order, and, therefore, we affirm his judgment of sentence.

      The trial court sets forth the facts of this case as follows:

      In March of 2018, Dauphin County Children and Youth Services
      [DCCYS] received a child abuse referral alleging that B.F. (DOB:
      8/[]/01) who was sixteen (16) years old at the time, had given

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 3122.1.

[2] *Id.* at § 6301.

[3] *Id.* at § 6318.

birth to a child. [I]t was alleged [by DCCYS] that B.F. was fifteen (15) years old at the time of conception and that [McLean, B.F.'s mother's paramour at the time of conception,] was the biological father of the child. . . . DCCYS had information from the hospital that B.F. wanted to put [McLean's] name as the biological father on the child's birth certificate.

B.F. had told hospital staff that she viewed [McLean] as a father, that she was planning on being adopted by him, and wanted her child to have the same last name as she. DCCYS interviewed B.F., who denied that [McLean] was the biological father.

Initially[,] the allegation was deemed unfounded upon the information DCCYS had at the time. Despite this, DCCYS was familiar with B.F. [due to two prior dependency proceedings in 2012 and 2015,] and had concerns with B.F.'s ability to care for her child.

* * *

During the summer of 2018, DCCYS provided housing assistance for B.F., her child, [B.F.'s mother (Mother), Mother's child with McLean, and McLean.] After a caseworker went to check on the family at the hotel [in which they were being housed], [] DCCYS began to have concerns that the relationship between B.F., [now] sixteen (16), and [McLean] was [not a familial relationship but rather a romantic relationship.] Thereafter, DCCYS pursued dependency of B.F. and her child.

On August 22, 2018, DCCYS obtained a court order[, issued by the Honorable John F. Cherry,] to place B.F. and her child in the care and custody of DCCYS, as well [as] an order for paternity testing of [McLean. It was subsequently determined that McLean failed to attend his scheduled appointment for paternity testing. As a result,] DCCYS requested an order for contempt of court for [McLean's] lack of compliance with the August 22, 2018 order. It was stipulated at the trial that the buccal swab of [McLean] was performed by [a "Miss Johnson"] on behalf of the court. After collecting DNA from the child, both samples were sent out for testing.

* * *

On November 8, 2018[, as a result of testimony stating there is a 99.99% probability that McLean is the biological father of B.F.'s

child, based on the results of the DNA test] the Honorable Royce Morris issued an order [legally establishing McLean's paternity.]

B.F. testified at trial and admitted that [McLean] is the biological father of her child. She further admitted that she and [McLean] engaged in sexual intercourse beginning when she was fifteen (15) years old, and adamantly stated that she consented. She also identified [McLean] in court and stated they were not married.

In addition to DCCYS' child abuse investigation, the Steelton Borough Police Department had also opened an investigation in March of 2018 and re-opened it in August of 2018. Officer Dory Thompson [] of Steelton Borough Police Department testified that they received a Childline referral in March of 2018 stating that B.F. had given birth to a child, that she was fifteen (15) years of age at the time of conception, and that [McLean's] name was on the child's birth certificate. Officer Thompson interviewed B.F., who denied the allegations, and because there was no other evidence that [McLean] was the father at that time, the case was closed.

After DCCYS took custody of B.F., she was placed in a foster home, then Pinkney's Vineyard,[4] and finally a youth shelter. Cell phones are prohibited at the youth shelter [and] DCCYS maintains possession of the youth's belongings if they are unable to give them to a parent. In this case, DCCYS took possession of B.F.'s phone. [This occurred sometime between late August and early September of 2018.] While [B.F.'s phone was in DCCYS'] possession, Mother provided the passcode to DCCYS and they were able to look at B.F.'s phone[, in which they found photographs and videos that prompted them to notify law enforcement.]

Based on the information provided by DCCYS, Officer Thompson [obtained a search warrant to obtain B.F's cell phone and download the contents of that cell phone, which revealed photos and videos of sexual acts performed by B.F. that had been

_____

4 Pinkney's Vineyard was founded in 2003 to help disadvantaged teen mothers. *See* PINKNEY'S VINEYARD OF FAITH MINISTRIES, http://pvfm.org/ (last visited Aug. 3, 2023).

forwarded to a number associated with McLean.[5]] Thereafter, Officer Thompson was notified that [McLean] was found to be the biological father of B.F.'s child through paternity testing. [As a result of learning of McLean's paternity results, and other information gathered throughout the Steelton Borough Police Department's investigation, criminal charges were filed against McLean shortly thereafter. Officer Thompson then applied for and obtained an arrest warrant for McLean.]

On or about November 25, 2018, McLean was charged with the above-mentioned offenses. McLean filed an omnibus pretrial motion to suppress the DNA evidence. After a hearing on February 20, 2020, before the Honorable William T. Tully, the suppression court denied McLean's motion[, concluding that] the dependency action August 22, 2018 order was lawfully filed, and that McLean's defense counsel conceded his argument upon learning that this order arose from a separate proceeding. A jury trial was held [with the same jurist presiding], beginning on October 6, 2020, wherein McLean was found guilty on all counts.

McLean was sentenced on December 16, 2020, to an aggregate sentence of six (6) to twelve (12) years of incarceration and five (5) years of consecutive state probation. McLean was notified he was a Tier 3 sexual offender [under the Sex Offenders Registration and Notification Act (SORNA)] and all standard sexual offender conditions were imposed. McLean filed a timely post-sentence motion on December 28, 2020, which was subsequently denied on January 7, 2021. On February 3, 2021, McLean filed a timely notice of appeal, which was dismissed on May 26, 2021, for failure to comply with Pennsylvania Rule of Appellate Procedure 3517.

On July 28, 2022, McLean filed a petition [under the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546]. Christopher Wilson, Esquire (Attorney Wilson) was appointed as PCRA counsel. Based upon the agreement of the parties, on November 10, 2022, Defendant's PCRA petition was granted, and his appeal rights were reinstated, *nunc pro tunc*. On January 31, 2023, McLean filed a timely notice of appeal, *nunc pro tunc*. The

_____

[5] The information obtained from B.F.'s cell phone was not used in Officer Thompson's affidavit of probable cause leading to the approval of a warrant for McLean's arrest in the underlying matter. *See* Affidavit of Probable Cause, 11/19/18, at 1-3. The affidavit was based solely on the events that led to the dependency court's order establishing McLean's paternity. *See id.* at 2-3.

trial court directed McLean to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).]

Trial Court Opinion, 3/23/23, at 2-7 (unpaginated, citations omitted).

On appeal, McLean raises the following issue for our consideration:

Whether the [s]uppression [c]ourt erred in denying the motion to suppress the DNA sample obtained from [McLean] while he was in prison, and whether the [s]uppression [c]ourt's decision was erroneous, and the findings were not supported by the record?

Appellant's Brief, at 3.

Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining

whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where . . . the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the court[] below are subject to our plenary review.

***Commonwealth v. Jones***, 988 A.2d 649, 654 (Pa. 2010).

The Fourth Amendment to the United States Constitution and Article I, § 8, of the Pennsylvania Constitution protects a private citizen from unreasonable searches and seizures. ***Commonwealth v. Wilmer***, 194 A.3d 564, 565 (Pa. 2018). In order to either search a constitutionally protected

- 5 -

area for evidence or seize a criminal defendant, law enforcement is generally required to obtain a warrant supported by probable cause, with limited exceptions. *See Commonwealth v. Edmunds*, 586 A.2d 887, 899 (Pa. 1991).

It is well settled that "[a] criminal defendant with standing to pursue a motion to suppress in this Commonwealth has a right to compel the prosecution to prove its evidence was not obtained in violation of his constitutional rights." *Commonwealth v. Enimpah*, 106 A.3d 695, 703 (Pa. 2014); *see* Pa.R.Crim.P. 581(H). The Commonwealth has the initial burden to "present evidence that the defendant's constitutional rights were not infringed." *See Enimpah*, 106 A.3d at 701. If the Commonwealth presents evidence that shows the defendant "lacked a privacy interest, the burden shifts to the defendant to demonstrate he had a reasonable expectation of privacy in the area searched." *Id.* Thereafter, it is incumbent on the suppression court to consider all of the evidence to determine whether the Commonwealth met its burden of production, and, if so, whether the defendant met his burden of persuasion that he possessed a reasonable expectation of privacy. *See id.*; *see also Commonwealth v. Elmobdy*, 823 A.2d 180, 183 (Pa. Super. 2003) ("It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given to their testimony. The suppression court is free to believe all, some or none of the evidence presented at the suppression hearing.").

Instantly, McLean contends that because the contempt order in the dependency action resulted in his incarceration, and the record is devoid of any testimony from the individual who performed the buccal DNA swab test for his paternity, McLean was coerced by law enforcement to consent to an unlawful search and seizure. *See* Appellant's Brief, at 10. McLean argues that the evidence obtained as a result of this alleged unlawful search and seizure, which resulted in the dependency court entering an order establishing McLean's paternity, could not be used in the officer's probable cause affidavit supporting his arrest for the subject offenses. *Id.* at 11. In support of its denial of McLean's suppression motion, the trial court opined that "[a]fter hearing testimony and reviewing the August 22, 2018, [o]rder, [] the dependency action was filed in good faith[, and t]here was no evidence of any police participation [or misconduct that] would otherwise justify suppression of any evidence." Trial Court Opinion, 3/23/23, at 9.

We agree with the trial court that the dependency action was a separate and lawful proceeding. The record of the suppression hearing supports the court's determination that the order establishing McLean's paternity would have provided the necessary probable cause to support a warrant for his arrest in this criminal matter, regardless of whether the court established paternity by default or by genetic testing. *See Eadie v. Bohatch*, 601 A.2d 361 (Pa. Super. 1992) (holding defendant's failure to comply with trial court's order to submit blood testing gave trial court authority to resolve paternity issue).

Additionally, we emphasize that the use of buccal swabs is a minimal intrusion into a defendant's privacy interest following his lawful arrest and does not require a demonstration of consent. ***See Commonwealth v. Smith***, 164 A.2d 1255, 1260 (Pa. Super. 2017) ("[W]hen the prospective DNA sample is being used for identification purposes [upon arrest], the donor of that sample has no more privacy interest in it than in his fingerprints."). Therefore, we find the Commonwealth sustained its burden of demonstrating McLean's constitutional rights were not infringed upon. ***See Enimpah, supra***.

Next, McLean contends that the suppression court's decision not to exclude the DNA test was not supported by the record, and, thus, constitutes reversible error. In response, the Commonwealth argues that because McLean was incarcerated as a result of the dependency court finding him in contempt for failure to submit to genetic testing, no warrant was needed to obtain his DNA. **See** Appellee's Brief, at 7. In fact, the trial court noted that, at the suppression hearing, McLean's defense attorney conceded that McLean was not coerced after he realized that the order was from the dependency court, and not "at the request of law enforcement." N.T. Suppression Hearing, 2/20/20, at 33. ***See also id.*** at 8 (defense counsel stating based on receipt of dependency court order and discussions with prosecution, "I don't think necessarily all aspects of that [suppression] motion are appropriate at this point."); ***id.*** at 17-19 (defense counsel acknowledging order was not initiated

by law enforcement; trial court stating "tenor of the case changes dramatically with the appearance of that court order" from dependency action).

In civil proceedings pertaining to domestic relations, dependency, or custody actions, the plaintiff has the right to request and obtain court-ordered genetic testing. **See** 23 Pa.C.S.A. § 4343(c)(1).[6] In the event that an order is granted requiring the defendant to submit to paternity testing, "[t]he order must advise the defendant that his failure to appear for the testing will result in entry of an order finding that he is the father of the child." Pa.R.C.P 1910.15(b)(1). Failure to appear for genetic testing by the defendant allows the requesting party to seek, and obtain, from the court, a contempt order punishable by a period of imprisonment, fines, and/or probation. **See** 23 Pa.C.S.A. § 4344.[7]

---

[6] "Upon the request of any party to an action to establish paternity, supported by a sworn statement from the party, the court or domestic relations section shall require the child and the parties to submit to genetic tests." 23 Pa.C.S.A. § 4343(c)(1).

[7] Pursuant to section 4344:

> A person who willfully fails or refuses to appear in response to a duly served order or other process under this chapter may, as prescribed by general rule, be adjudged in contempt. Contempt shall be punishable by any one or more of the following:
>
> (1) Imprisonment for a period not to exceed six months.
>
> (2) A fine not to exceed $ 500.
>
> (3) Probation for a period not to exceed six months.

23 Pa.C.S.A. § 4344.

Here, it was established at the suppression hearing that the dependency court had the authority to issue its August 22, 2018 order requiring McLean submit to court-ordered DNA testing following DCCYS' initiation of its action. **See** N.T. Suppression Hearing, 2/20/20, at 4. As a result of McLean's failure to comply with the dependency court's order, he was lawfully found in contempt. **See id.** at 13-14. All of this information was relayed to Officer Thompson of the Steelton Borough Police Department and was included in Officer Thompson's testimony at the suppression hearing. **See id.**; **see also Elmobdy**, **supra**.

"[W]ith respect to the breathalyzer test, buccal, swab, and fingernail scrape, the United States Supreme Court has characterized the scope of the intrusions as . . . an 'almost negligible' physical intrusion; and[] a 'very limited intrusion.'" **Commonwealth v. Simonson**, 148 A.3d 792, 800 (Pa. Super. 2016) (citing **Birchfield v. North Dakota**, 579 U.S. 438, 462 (2016); **Maryland v. King**, 569 U.S. 435, 446 (2013); and **Cupp v. Murphy**, 412 U.S. 291, 296 (1973)). In **Simonson**, this Court held that a gun residue test on a defendant's hands could not be considered an unlawful intrusion and was a search incident to a lawful arrest supported by a legitimate governmental interest. **See id.** at 800. We found that this test was far less intrusive than the buccal swab at issue in **Maryland v. King**, **supra**. **See Simonson**, **supra** at 801. However, we also emphasized that a defendant's privacy interest

protecting him or her from a buccal swab is substantially diminished once in police custody. **See id.** at 800.

Additionally, "DNA collection occurs only after it has been determined that there is probable cause to believe that the arrestee committed a crime. In light of this probable cause finding, arrestees possess a diminished expectation of privacy in their own identity, which has traditionally justified taking their fingerprints and photographs." **Smith**, **supra** at 1260 (quoting **United States v. Mitchell**, 652 F.3d 387, 411-12 (3d. Cir. 2011)). While McLean avers that reliance on **Smith** is misplaced as its factual basis arises out of a buccal swab pursuant to a warrant, **see** Appellant's Reply Brief, at 1, the discussion it provides on the degree of a defendant's expectation of privacy is instructive on the suppression issue at bar. **See Smith**, **supra** at 1259-60.

Here, the dependency court's finding that McLean was in contempt as a result of his failure to appear for paternity testing was, conclusively, an order mandating his arrest. **See** N.T. Suppression Hearing, 2/20/20, at 13-14. As a result of this arrest, Officer Thompson obtained information that McLean was in custody of law enforcement at Dauphin County Prison. **See id.** at 14. Under these circumstances, it is abundantly clear that McLean's arrest was supported by probable cause. **See Smith, supra** at 1260. With McLean in police custody, the need to obtain his consent was substantially diminished, as was his reasonable expectation of privacy concerning the DNA test. **See Simonson**, **supra** at 800.

As noted above, a court presiding over domestic relations matters may enter a contempt order in response to a defendant's failure to follow a court order, but it is not the sole remedy. *See Smith v. Beard*, 473 A.2d 625, 629 (Pa. Super. 1984) (establishing dependency court may resolve question of paternity on its own accord following defendant's inability to comply with paternity blood testing). A dependency court has the discretion to determine the applicable penalty regardless of a defendant's inability or refusal to comply with a court order, or refusal to submit to paternity testing for other reasons. *See Eadie, supra* at 310-11; *see also supra* n.7.

Here, assuming, *arguendo*, that McLean's buccal swab DNA test had occurred as a result of an unlawful arrest and thus violated his protected privacy interest, the dependency court could have made a default determination that McLean was the father of B.F.'s child **solely based upon his failure to appear for the testing.** *See Eadie*, *supra* at 309. Even if the order establishing paternity by the dependency court was lacking any reasonable degree of biological certainty, but was only the result of McLean's own default, the order would still provide the necessary probable cause for Officer Thompson to obtain a warrant for McLean's arrest. *See In re Petition to Compel with Child Abuse Investigation*, 875 A.2d 365, 379 (Pa. Super. 2005) (holding plaintiff Child and Youth Services need not obtain warrant when performing investigation subject to domestic relations court order, but

separate criminal matters require solicitation of warrant supported by probable cause).

McLean was lawfully arrested and incarcerated due to a finding of contempt by the dependency court, and since that finding was predicated on his failure to submit to a buccal DNA swab, which is also a routine booking procedure incident to that arrest, we do not require any further inquiry into the conduct of law enforcement at that time. *See Smith*, *supra* at 1259-60.[8]

We hold that a buccal mouth swab test conducted incident to a defendant's incarceration for contempt of an order entered in a separate dependency matter, which test was used to establish paternity in the dependency matter, does not violate a defendant's privacy rights when that determination of paternity is used to obtain an arrest warrant in a subsequent criminal matter. Accordingly, the suppression court did not err in denying McLean's motion to suppress. *Jones*, *supra*.

_____

[8] While the Supreme Court of Pennsylvania has recently emphasized that an absence of evidence suggesting any exigent circumstance does not permit officers to order a warrantless, non-consensual blood draw, reliance on this decision is misguided in the context of McLean's DNA sample. *See Commonwealth v. Jones-Williams*, 279 A.3d 508 (Pa. 2022). The comparison of a blood test without a warrant to a buccal swab subject to a lawful arrest implicates two distinct expectations of privacy. Law enforcement does not have the ability to obtain warrantless blood draws due to the higher degree of bodily intrusion into a defendant's person. *See Simonson*, *supra* at 797. However, a buccal swab has long been considered a negligible intrusion for the limited scope of what it can establish. *See id.* at 799.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 09/7/2023