J-S11007-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RICHARD LEWIS | : | |
| | : | |
| Appellant | : | No. 778 EDA 2023 |

Appeal from the Judgment Entered March 8, 2018
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0004890-2017

BEFORE:   BOWES, J., McLAUGHLIN, J., and COLINS, J.[*]

MEMORANDUM BY BOWES, J.:                                      **FILED JUNE 14, 2024**

Richard Lewis appeals *nunc pro tunc* from the judgment of sentence of two and one-half to seven years of imprisonment imposed upon his convictions for theft by unlawful taking and receiving stolen property. We affirm.

The trial court accurately summarized the testimony offered by each witness at Appellant's trial as follows:

> Victim Elizabeth McCabe testified [that] on July 3, 2015, she was living with her parents and siblings at 239 Hilldale Road, Villanova, Pennsylvania. On July 5, 2015, she returned from vacation in Avalon, New Jersey in the early afternoon. When she arrived at the house, she noticed the open garage door which was unusual, and she went inside. No one was supposed to be inside the house while the family was away. When she was inside, she noticed the mudroom door was open and the window above the kitchen was wide open, which was unusual. She called her mother

_____

[*] Retired Senior Judge assigned to the Superior Court.

and then 911. The police arrived and checked the house and began an investigation, and they noticed an outdoor chair was below the open kitchen window and not with the set.

. . . .

Victim Deborah McCabe testified she lives with her family at 239 Hilldale Road in Villanova. She testified the family went to the shore in Avalon, New Jersey for the July 4th holiday weekend, and no one was given permission to enter her home. [When she left for vacation, the chair was not near the kitchen window, the kitchen window was closed, and the garage door was closed.] When she was traveling home, she received a phone call from her daughter about the unusual state of the house. She directed her daughter to call 911 and go the neighbor's house. Not much had been disturbed downstairs but upstairs the pillows from the master bedroom had been disturbed, and the closet was emptied including the drawers and the antique jewelry box was dumped on the floor and it was obvious[ that] someone had ransacked her home. A lot of her jewelry was missing, including jewelry left from her mother and grandmother, the jewelry from the jewelry box, and the jewelry from the drawer in her closet. The approximate value of the missing jewelry totaled more than six figures. Pieces of her grandmother's jewelry were 18 carat gold, diamond, and sapphires and other family heirlooms. Also missing was her duffel bag, the pillowcase, and her Mercedes Benz car and keys. She began looking online for her jewelry, and located some on a New York site using Ebay. She emailed Detective [James] Santoloquito and the Delaware detective who were working on the investigation. The pieces were recovered in New York. Several weeks later, she learned a lot of her jewelry was recovered in a storage facility in Delaware. On October 27, 2015, she went to identify her jewelry. She also was able to get her car returned.

. . . .

Detective Santoloquito testified he works for the Radnor Township Police Department and he has investigated around one hundred burglaries. On the night of July 4, 2015, he received a phone call from Detective [David] DiNardo in Newcastle County, Delaware concerning an investigation and a part of the investigation there [wa]s a GPS tracker on . . . a white Lexus [that was] parked on Aldwyn Lane in the parking lot of TD Bank. He notified the on-duty supervisor Detective Maguire to discuss

setting up a surveillance of the Lexus to try to identify anybody who approaches it. The surveillance began and the next day a white Jeep drove up to the Lexus; a female got out from the Jeep and into the Lexus and drove away. At 2:15 p.m. the Lexus was stopped, and Appellant's girlfriend Letitia Rochester was identified as the driver. Detective DiNardo had told him about Letitia Rochester and Appellant during their phone call, and Detective Santoloquito identified Appellant. Letitia Rochester said she left the Lexus in the parking lot the night before after she had been drinking and did not want to drive it. On July 5, 2015, at 2:30 he was called to investigate the Hilldale Road burglary. He spoke with Elizabeth McCabe, and walked into the house to investigate. He saw the open window and outdoor chair, he noticed the master bedroom was ransacked. Aldwyn Lane is very close to Hilldale Road. He processed the Hilldale Road house and the next day he contacted Detective DiNardo in Newcastle County to discuss the investigation. On August 3, 2015, Deborah McCabe advised on Ebay she located a link to a New York City jewelry store and some of her jewelry was listed for sale on the site. He relayed this information to Detective DiNardo and they went to the store in New York City. Those items were recovered. Other items were recovered in a storage facility in Wilmington, Delaware.

. . . .

Witness [Alexander] Kataev testified in relevant part he is a jeweler and owner of Metals NY, a shop on 47th Street between 5th and 6th Avenues in midtown Manhattan, New York City, also known as the Diamond District. Witness Kataev identified Appellant as the person who in July 2015 came into his office to sell jewelry, scrap jewelry and silver. He put it for sale online through Ebay. He has seen Appellant on other occasions and he recognizes Appellant. In July 2015, a Delaware detective contacted him about the items Appellant had brought him. On August 6, 2015, Detective DiNardo came to the store in New York City and the items were seized. When he makes a purchase, he takes the seller's identification as part of record keeping. Appellant gave him identification. He identified the jewelry Appellant sold to him and subsequently taken by the police. Appellant's identification was a driver's licenses with an address at 201 East 12th Street, Chester, P[ennsylvania] 19013.

. . . .

- 3 -

Detective DiNardo testified he works for the Newcastle Co[u]nty Police Department. On July 4, 2015, he was conducting electronic surveillance on Appellant, a burglary suspect in Delaware. He identified Appellant. There was a tracking device installed [pursuant to a warrant] on a Lexus they knew Appellant drove, and the vehicle was tracked to a bank in Villanova. He realized the bank was near a residential facility, and this was similar to the burglaries he was investigating. He contacted Radnor Police Department and told Detective Santoloquito he was investigating burglaries in Delaware and he determined the Lexus was used in the burglaries; he tracked the Lexus to Villanova. The GPS tracking data showed the next day the Lexus was tracked back to the storage facility Sentinel Storage in Newport, D[elaware]. Appellant was known to have several contacts with the storage facility, and he personally had seen Appellant at the facility. On July, 9, 2015, the vehicle was tracked to 47th Street in New York City. [Detective DiNardo] met with Alexander Kataev at his store and took the items from the Hilldale Road burglary. In October 2015, he interviewed Appellant and told Appellant about his investigation[ and] how he followed Appellant; Appellant commented he thought he was being tailed and he goes to great lengths to keep his girlfriend clean. [Detective DiNardo] obtained a search warrant for the Sentinel Storage unit and recovered many items, mostly jewelry. Several pieces were identified as the jewelry from the McCabe home. A search warrant was executed on the Lexus and it had flashlights, a lock, a deadbolt lock, a master lock, and a black sweatshirt, pry bar, screwdriver were found.

Trial Court Opinion, 8/14/23, at 4-11 (cleaned up, some punctuation added).

Appellant was arrested and charged with burglary, criminal trespass, theft by unlawful taking, receiving stolen property, and unauthorized use of a motor vehicle. He moved to suppress all of the evidence obtained through the use of the GPS tracking device. The trial court denied the motion after a hearing and a jury convicted Appellant of the two theft offenses but acquitted him of the remaining charges. Appellant was sentenced as indicated above on March 3, 2018.

- 4 -

Appellant *pro se* filed an untimely direct appeal, which this Court quashed. He filed a timely *pro se* petition pursuant to the Post Conviction Relief Act ("PCRA") which the court granted by order entered February 3, 2023, to the extent that it requested the reinstatement of his direct appeal rights. PCRA counsel did not file a notice of appeal on Appellant's behalf, and instead moved to withdraw to allow for "more qualified" appellate counsel to be appointed. **See** Application for Appointment of Appeal Counsel, 2/28/23, at ¶ 7. By order of March 3, 2023, the court granted the application and instructed newly-appointed counsel to file a notice of appeal within thirty days. Counsel filed the notice of appeal on March 28, 2023, as well as a timely court-ordered Pa.R.A.P. 1925(b) statement.

This Court noted that the notice of appeal was not filed within thirty days of the order reinstating Appellant's direct appeal rights *nunc pro tunc* and issued a rule to show cause why the appeal should not be quashed as untimely. **See** Order, 5/31/23 (citing **Commonwealth v. Wright**, 846 A.2d 730, 734 (Pa.Super. 2004) ("When the trial court issues an order reinstating an appellant's appeal rights, the appellant must file the appeal within [thirty] days of the order reinstating the appeal rights.")). Appellant filed a response observing that the order reinstating his appellate rights, just as the one in **Wright**, did not inform him that he had thirty days to file the appeal. Therefore, Appellant argued that this Court should, like the **Wright** Court, decline to quash the appeal and accept it as timely filed in accordance with

the trial court's subsequent order. *See* Response to Rule to Show Cause, at 4-5. This Court discharged the rule, but noted that this panel would make the final determination of the issue. We do so now, agreeing with Appellant that the trial court's initial failure to inform him of the need to file the appeal within thirty days, as well as its subsequent misinformation about when the thirty-days began to run, was a breakdown that excuses the late filing of the appeal. *See Wright*, 846 A.4d at 735,

Accordingly, we proceed to the questions presented by Appellant, which he states as follows:

> 1. Whether the verdict of guilty of theft by unlawful taking is based upon insufficient evidence, in violation of Appellant's right to due process of law under the Fourth and Fourteenth Amendments to the United States Constitution and Article 1 [§§] 8 and 9 of the Pennsylvania Constitution, where no evidence was introduced to show that Appellant committed the actual taking of items belonging to the victim[.]
>
> 2. Whether the verdict of guilty of receiving stolen property is based upon insufficient evidence, in violation of [Appellant's] right to due process of law under the Fourth and Fourteenth Amendments to the United States Constitution and Article 1 [§§] 8 and 9 of the Pennsylvania Constitution, where no evidence was introduced to show that Appellant received, retained, or disposed of property belonging to the victim, knowing the property had been stolen, or believing that it had probably been stolen[.]
>
> 3. Whether [Appellant] was subjected to an unlawful search, denied rights guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution, and Article 1 [§§] 8 and 9 of the Pennsylvania Constitution, and subjected to a violation of 18 Pa.C.S. [§] 5761, where police in Pennsylvania obtained information about [Appellant] as the direct result of the use by out-of-state police of an electronic tracking device within the Commonwealth of

> > Pennsylvania, without a warrant first having been issued in Pennsylvania[.]

Appellant's brief at 4-5 (cleaned up).

We begin with an examination of the law applicable to Appellant's sufficiency challenges:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for a fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence received must be considered. Finally, the trier of fact, while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Haahs*, 289 A.3d 100, 104 n.2 (Pa.Super. 2022) (cleaned up). "Furthermore, in conducting our analysis, we consider all of the evidence actually admitted at trial and do not review a diminished record." *Commonwealth v. Koch*, 39 A.3d 996, 1001 (Pa.Super. 2011).

Appellant first assails the evidentiary support for his conviction of theft by unlawful taking—movable property. Our legislature has defined that crime as follows: "A person is guilty of theft if he unlawfully takes, or exercises unlawful control over, movable property of another with intent to deprive him

thereof." 18 Pa.C.S. § 3921(a). Appellant argues that "there is no evidence accompanying [his] possession and sale of items taken from the McCabe home, sufficient to justify a finding that Appellant actually stole the items." Appellant's brief at 21. He highlights the fact that the Commonwealth did not offer any witness or physical evidence, such as DNA or fingerprints, to connect him with the McCabe residence, their stolen Mercedes Benz, or the storage facility where stolen items were found. *Id*. at 21-22.

However, the question is not whether additional evidence that the Commonwealth did not produce would have more completely established Appellant's guilt. The query is whether the evidence that was proffered, viewed in the light most favorable to the Commonwealth, was sufficient to allow the jury to conclude beyond a reasonable doubt that Appellant unlawfully took or exercised control over the McCabes' movable property. Plainly it was. As detailed above, the jury heard that a Lexus owned by Appellant's partner, and was being tracked by Delaware law enforcement due to its association with Appellant, was parked near the McCabes' home on the date of the theft. Police subsequently tracked the vehicle to New York City, where Appellant sold some of the McCabes' jewelry. More of the McCabes' property was found in a Delaware storage locker leased by the sister of Appellant's partner. The execution of a search warrant on the Lexus produced flashlights, a black sweatshirt, a pry bar, and a screwdriver. The stolen Mercedes was recovered in Chester County, Pennsylvania near the address on Appellant's driver's

license. From this, the jury could rationally conclude that Appellant had unlawfully taken and exercised control over not only the McCabes' jewelry that he sold to Mr. Kataev, but all the movable property taken from their residence. Thus, the evidence was sufficient to sustain Appellant's conviction for theft by unlawful taking.

Appellant also contends that the evidence failed to establish his guilt for receiving stolen property. The statute defining that offense provides: "A person is guilty of theft if he intentionally receives, retains, or disposes of movable property of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed with intent to restore it to the owner." 18 Pa.C.S. § 3925(a).

In furthering this challenge, "Appellant would repeat arguments set out above regarding the dearth of evidence that he was in possession of the stolen items." Appellant's brief at 25. As for the jewelry Appellant sold to Mr. Kataev, Appellant concedes the proof of possession, but asserts that there was insufficient proof of his knowledge that they were stolen. He posits that, on the contrary, "[o]ne would expect that a person with guilty knowledge of the stolen nature of such items . . . would not sell them to a legitimate business, already having provided that business with a traceable identification, and knowing full well that the business would place the items into public channels for sale." *Id*.

Since, as we detailed above, the evidence was sufficient to establish that Appellant was the person who stole the McCabes' property, it was sufficient to prove that he possessed and retained them with knowledge that they were stolen. Further, the jury was free to reject Appellant's argument that a wiser thief would have disposed of the jewelry differently. In assessing evidentiary sufficiency, it is not our place to reweigh the evidence. Thus, Appellant's second sufficiency challenge fails for the same reason as the first.

Appellant's remaining issue concerns the trial court's ruling on his suppression motion. In that vein:

> [O]ur standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. We are bound by the suppression court's factual findings so long as they are supported by the record; our standard of review on questions of law is *de novo*. Where, as here, the defendant is appealing the ruling of the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted. Our scope of review of suppression rulings includes only the suppression hearing record and excludes evidence elicited at trial.

*Commonwealth v. Singleton*, 169 A.3d 79, 82 (Pa.Super. 2017) (cleaned up).

The Fourth Amendment to the federal Constitution and Article I, § 8 of the Pennsylvania Constitution both protect against **unreasonable** searches and seizures. *See* U.S. Const. amend. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but

upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."); Pa. Const. Art. I, § 8 ("The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant."). While there are instances in which the Pennsylvania Constitution affords greater protections than the Fourth Amendment, we will treat the constitutional safeguards as coextensive where, as here, the defendant does not contend otherwise. **See**, **e.g.**, **Commonwealth v. Lagenella**, 83 A.3d 94, 99 n.3 (Pa. 2013).

The U.S. Supreme Court has held that "the Government's installation of a GPS device on a target's vehicle, and its use of that device to monitor the vehicle's movements, constitutes a 'search'" for purposes of the Fourth Amendment. **United States v. Jones**, 565 U.S. 400, 404 (2012). "In order to either search a constitutionally protected area for evidence or seize a criminal defendant, law enforcement is generally required to obtain a warrant supported by probable cause, with limited exceptions." **Commonwealth v. McLean**, 302 A.3d 211, 216 (Pa.Super. 2023). Stated differently, "a search is reasonable when it is conducted pursuant to a warrant supported by probable cause." **Commonwealth v. Merkt**, 600 A.2d 1297, 1299 (Pa.Super. 1992).

With these principles in mind, we turn to Appellant's arguments. He asserts that the entire time that the Lexus in question was "within the borders of this Commonwealth and [wa]s monitored by way of a GPS device attached by police, the vehicle [wa]s subject to an ongoing search that [wa]s of constitutional dimension and controlled by very strict statutory conditions." Appellant's brief at 41. Specifically, Appellant cites the provision of the Wiretap Act ("the Act"), 18 Pa.C.S. §§ 5701-5782, that states as follows:

**§ 5761. Mobile tracking devices**

**(a) Authority to issue.--**Orders for the installation and use of mobile tracking devices may be issued by a court of common pleas.

**(b) Jurisdiction.--**Orders permitted by this section may authorize the use of mobile tracking devices if the device is installed and monitored within this Commonwealth. The court issuing the order must have jurisdiction over the offense under investigation.

**(c) Standard for issuance of order.--**An order authorizing the use of one or more mobile tracking devices may be issued to an investigative or law enforcement officer by the court of common pleas upon written application. Each application shall be by written affidavit, signed and sworn to or affirmed before the court of common pleas. The affidavit shall:

(1) state the name and department, agency or address of the affiant;

(2) identify the vehicles, containers or items to which, in which or on which the mobile tracking device shall be attached or be placed, and the names of the owners or possessors of the vehicles, containers or items;

(3) state the jurisdictional area in which the vehicles, containers or items are expected to be found; and

- 12 -

(4) provide a statement setting forth all facts and circumstances which provide the applicant with probable cause that criminal activity has been, is or will be in progress and that the use of a mobile tracking device will yield information relevant to the investigation of the criminal activity.

**(d) Notice.--**The court of common pleas shall be notified in writing within [seventy-two] hours of the time the mobile tracking device has been activated in place on or within the vehicles, containers or items.

**(e) Term of authorization.--**Authorization by the court of common pleas for the use of the mobile tracking device may continue for a period of 90 days from the placement of the device. An extension for an additional 90 days may be granted upon good cause shown.

**(f) Removal of device.--**Wherever practicable, the mobile tracking device shall be removed after the authorization period expires. If removal is not practicable, monitoring of the mobile tracking device shall cease at the expiration of the authorization order.

**(g) Movement of device.--**Movement of the tracking device within an area protected by a reasonable expectation of privacy shall not be monitored absent exigent circumstances or an order supported by probable cause that criminal activity has been, is or will be in progress in the protected area and that the use of a mobile tracking device in the protected area will yield information relevant to the investigation of the criminal activity.

18 Pa.C.S. § 5761.

Appellant maintains that when the Delaware police tracked his vehicle into Pennsylvania and monitored its movements here, § 5761's requirements, including authorization by a Pennsylvania court of common pleas in the jurisdiction, were triggered. *See* Appellant's brief at 46. He argues that since the Delaware police did not comply with § 5761, they illegally obtained the

- 13 -

information that they then shared with the Radnor Township Police. *Id*. Thus, he concludes, the evidence that the Radnor Township Police uncovered by acting upon that information was the fruit of the poisonous tree and must be suppressed. *Id*. at 46-47.

While Appellant references the provisions of the federal and state constitutions that prohibit unreasonable searches and seizures in stating his appellate issue, he does not base his suppression argument on a constitutional violation, but only upon the alleged violation of § 5761 of the Act. We observe at the outset that it does not appear that § 5761 has any application in this case. The statute allows Pennsylvania common pleas courts to "authorize the use of mobile tracking devices if the device is **installed and monitored** within this Commonwealth." 18 Pa.C.S. § 5761(b) (emphasis added). Since the device was not installed in Pennsylvania, by its plain terms § 5761 is not implicated.

Furthermore, while Subchapter B of the Act contains an exclusionary rule for non-constitutional violations of the statute's requirements for intercepting wire, electronic, or oral communications,[1] there is no such provision in Subchapter D, which governs mobile tracking devices such as the

---

[1] *See* 18 Pa.C.S. § 5712.1(b) ("Any aggrieved person who is a party to any proceeding in any court, board or agency of this Commonwealth may move to exclude the contents of any **wire**, **electronic or oral communication**, or evidence derived therefrom, on any of the [grounds enumerated in the subsection]." (emphasis added).

GPS tracker at issue in this case. Accordingly, in the absence of authority for the proposition that the requirements of § 5761 are coextensive with the mandates of the Fourth Amendment or Article I, § 8 of the Pennsylvania Constitution, Appellant cannot prevail without demonstrating that the evidence he seeks to exclude was otherwise obtained from an unreasonable search or seizure.[2]

Here, the trial court found that the Delaware police installed and monitored the GPS device pursuant to a properly-issued warrant and, therefore, there was "nothing unlawful about Radnor police receiving information from Delaware police concerning its investigation and the GPS tracker on the Lexus." Trial Court Opinion, 8/14/23, at 20. Appellant presents no constitutional challenge to the existence of probable cause or the validity

---

[2] If suppression could be warranted by a failure of the police to obtain an order in accordance with the non-constitutional requirements of the Act, in addition to the warrant pursuant to which the Delaware police placed and monitored the tracking device, we would nonetheless affirm for the reasons stated in the trial court's opinion. **See** Trial Court Opinion, 8/14/23, at 19-20 (concluding that no order issued under the Act was necessary based upon our decision in **Commonwealth v. Cole**, 167 A.3d 49 (Pa.Super. 2017)); **Cole**, 167 A.3d at 65-67 (concluding that a Maryland police department's sharing with Pennsylvania police information they acquired through the live tracking of a cell phone pursuant to a Maryland court order did not violate the appellant's expectation of privacy codified in Subchapter E of the Act where, *inter alia*, the Maryland order was obtained upon a showing of probable cause and not as a deliberate attempt to circumvent the Act, and the defendant's privacy expectations did not change when he crossed the border from Maryland into Pennsylvania).

of the warrant. Accordingly, we have no basis to conclude that the trial court erred or abused its discretion in denying Appellant's suppression motion.

Having determined that none of Appellant's issues merits relief, we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/14/2024