J-S36025-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
MATTHEW C. FRANKLIN :
:
Appellant : No. 319 WDA 2025

Appeal from the Judgment of Sentence Entered February 7, 2025
In the Court of Common Pleas of Indiana County Criminal Division at
No(s): CP-32-CR-0000047-2024

BEFORE: PANELLA, P.J.E., NICHOLS, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY NICHOLS, J.: **FILED: February 5, 2026**

Appellant Matthew C. Franklin appeals from the judgment of sentence imposed after he was convicted of driving under the influence: general impairment (DUI), driving on roadways laned for traffic, driving an unregistered vehicle, and careless driving.[1] On appeal, Appellant claims the trial court erred by denying his motion to suppress and that the evidence presented at trial was insufficient to convict him of DUI. After review, we reverse the trial court's denial of suppression and remand for further proceedings.

On October 22, 2023, Thomas Kline was in Kittanning Township when he observed Appellant attempting to get on a motorcycle in a parking lot. ***See***

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 75 Pa.C.S. §§ 3802(a)(1), 3309(1), 1301(a), and 3714(a), respectively.

N.T., 2/3/25, at 12-13. Kline first saw the motorcycle lying on the ground and Appellant attempting to pick it up. *Id.* at 13. Kline asked Appellant if he needed help with the motorcycle, but Appellant refused. *Id.* Appellant righted the motorcycle but then dropped it to the ground on the other side. *Id.* Kline asked Appellant if he needed a ride, but Appellant stated that he was going in the opposite direction. *Id.* Kline pulled his truck over into the parking lot of a Dollar Store and saw Appellant pick his motorcycle back up. *Id.* at 14. Appellant drove out of the parking lot but "spilled back over while he was driving [the motorcycle], into the berm of the road in front of the dollar store." *Id.*

Kline's daughter, who was in the truck with him, called 911 and gave Kline the phone to speak to dispatchers, who asked Kline to follow Appellant. *Id.* Kline followed Appellant to Shelocta. *Id.* While Kline followed Appellant, he observed Appellant driving "all over the road, into the other lane." *Id.* Kline noted that he observed tractor trailers drive off the road to avoid a collision with Appellant. *Id.* at 14-15. Eventually, Kline saw Appellant pull into an area behind some buildings where he believed an apartment building or motel was located. *Id.* at 15. Kline stopped in a nearby car wash parking lot, where police met him shortly thereafter. *Id.* at 16-18, 20.

Police went to the area where Kline had seen Appellant drive the motorcycle. *See id.* at 42-43. There was only one motorcycle in the parking lot of the apartments. *Id.* at 43. Police noticed that the engine of the motorcycle was still warm. *Id.* at 29. Police asked a neighbor whose

- 2 -

motorcycle it was, and the neighbor pointed to Apartment 15. *Id.* at 43. Police approached Apartment 15 and knocked on the door, which was ajar. *Id.* Police then heard a male inside who said something that sounded like "yes" and entered the apartment where they found Appellant inside. *Id.* Police noticed that Appellant was intoxicated and was wearing motorcycle gear. *Id.* at 44.

Appellant was arrested on October 22, 2023, and charged with the aforementioned charges. Appellant was arraigned on March 26, 2024.

On February 3, 2025, the case proceeded to a non-jury trial before the Honorable Gina R. Force. Before the trial began, Appellant made an oral motion to suppress arguing that the search of his apartment without a warrant was illegal and that the fruits of the search should be suppressed. *See id.* at 5-6. The Commonwealth objected to the timeliness of the motion to suppress. *Id.* at 8-9. The trial court decided to consider Appellant's motion over the Commonwealth's objection. *Id.* at 10. The trial court proposed hearing the suppression evidence simultaneously with the bench trial evidence and rendering a decision on the suppression motion before rendering a verdict. *Id.* Neither Appellant nor the Commonwealth objected to that procedure. *Id.* at 10-11. At the conclusion of trial, the trial court deferred its ruling on the motion to suppress and the verdict. *Id.* at 61-62, 67, 71.

On February 7, 2025, the trial court held a hearing where it announced its decision on the motion to suppress and the verdict. *See* N.T., 2/7/25, at 3, 5. The trial court overruled the Commonwealth's timeliness objection to

Appellant's motion to suppress and denied Appellant's motion on the merits. *See id.* at 4-5. The trial court then found Appellant guilty of all the aforementioned charges and proceeded to sentencing.[2] *See id.* at 5-7. The trial court sentenced Appellant to a term of six months' probation for DUI.[3]

Appellant filed a timely notice of appeal. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

On appeal, Appellant raises the following issues:

1. [W]hether the trial court erred by denying [Appellant's] oral pretrial motion to suppress the warrantless search of the [Appellant's] residence without consent and all evidence gathered as a result of that search as fruits of the poison tree.

2. [W]hether the trial court erred in finding that the Commonwealth presented sufficient evidence to prove beyond a reasonable doubt that Appellant drove while incapable of safely doing so, and in therefore declining to grant Appellant's motion for a judgment of acquittal.

Appellant's Brief at 12 (some formatting altered).

In his first issue, Appellant claims that the trial court erred by denying his motion to suppress. *See* Appellant's Brief at 37-43. Specifically, Appellant argues that Trooper Ramsden's testimony did not support "a finding that clear,

---

[2] We note that Appellant waived completion of a presentence investigative report. *See* N.T., 2/7/25, at 7.

[3] In addition to the probationary term, the Court imposed fines and costs associated with the prosecution for DUI. *See* Sentencing Order, 2/7/25, at 1 (unpaginated). Additionally, the court imposed fines on the charges of disregard of traffic lane, driving an unregistered vehicle, and careless driving. *See id.* at 2-3 (unpaginated).

unequivocal consent to enter the residence was given." ***Id.*** at 40-43.

Accordingly, Appellant asks this Court to reverse the trial court's order denying

suppression and to order a new trial with all of the evidence resulting from

Trooper Ramsden's warrantless entry suppressed. ***Id.*** at 50-51.

> Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where . . . the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the court[ ] below are subject to our plenary review.

***Commonwealth v. McLean***, 302 A.3d 211, 215 (Pa. Super. 2023) (citing

***Commonwealth v. Jones***, 988 A.2d 649, 654 (Pa. 2010)) (some formatting

altered).

Our Supreme Court has addressed consent searches as follows:

> Both the Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution protect individuals, their homes, their papers, and their effects and possessions from unreasonable searches and seizures. For a search to be lawful, police must first obtain a warrant, supported by probable cause, from a neutral and detached magistrate. A search conducted without a warrant is deemed to be unreasonable and therefore constitutionally impermissible, unless an established exception applies.

One of the limited exceptions to the warrant requirement is a consensual search. We have long approved consensual searches because it is no doubt reasonable for the police to conduct a search once they have been permitted to do so. Although a warrantless, but consensual, search is constitutionally permissible, obtaining consent is an investigative tool utilized by law enforcement. It allows police to do what otherwise would be impermissible without a warrant. As a consent search is in derogation of the Fourth Amendment, there are carefully demarked limitations as to what constitutes a valid consent search.

*Commonwealth v. Valdivia*, 195 A.3d 855, 861 (Pa. 2018) (citations omitted and some formatting altered).

"Whether an individual has voluntarily consented to a search is a question of fact which must be determined in each case from the totality of the circumstances." *Commonwealth v. Metz*, 332 A.3d 92, 100 (Pa. Super. 2025) (citation omitted and some formatting altered). "In order for consent to an otherwise illegal search to be valid, the consent must be unequivocal, specific, and voluntary." *Commonwealth v. Gibson*, 638 A.2d 203, 207 (Pa. 1994). "The burden of proving a valid consent to search, since it represents a waiver of a substantial constitutional right, rests with the Commonwealth; and, the courts will indulge every reasonable presumption against such waiver." *Commonwealth v. Gallagher*, 263 A.3d 1207, 1212 (Pa. Super. 2021) (citation omitted).

Further,

[f]or a finding of voluntariness, the Commonwealth must establish that the consent given by the defendant is the product of an essentially free and unconstrained choice – not the result of duress or coercion, express or implied, or a will overborne – under the totality of the circumstances.

If consent is given voluntarily, the ensuing search must be conducted within the scope of that consent. The standard for measuring the scope of an individual's consent is one of objective reasonableness. We do not ascertain the scope of consent from the individual's subjective belief or the officer's understanding based on his or her training and experience, but based on what the typical reasonable person would have understood by the exchange between the officer and the suspect.

*Valdivia*, 195 A.3d at 862 (citations omitted and some formatting altered).

Finally, where an appellate court reverses an order denying suppression, the proper remedy is to vacate the appellant's judgment of sentence and remand the case for a new trial at which the Commonwealth is not permitted to introduce the illegally obtained evidence. *See Commonwealth v. Mattis*, 252 A.3d 650, 656 (Pa. Super. 2021).

Here, the trial court addressed Appellant's claim as follows:

Based on the testimony provided, this court denied [Appellant's] oral pretrial motion to suppress the warrantless search of [Appellant's] residence and fruits of that search including the [Appellant's] seizure. Relying on [*Commonwealth v. Quiles*, 619 A.2d 291 (Pa. Super. 1993)], this court finds the [Appellant] voluntarily gave Troopers Ramsden and O'Rourke consent to enter his residence after Trooper Ramsden knocked three times on the ajar door and announced who he was. Trooper Ramsden testified he then understood [Appellant] to issue a statement that was an invitation to come inside. This testimony was uncontradicted. This statement was provided while [Appellant] was inside of the dwelling and prior to Trooper Ramsden entering the residence. The testimony submitted was that [Appellant] did not hesitate in his response and the door to the residence was already ajar when approached by law enforcement. The court found the testimony of Troopers Ramsden and O'Rourke credible and believe[d] the statement issued by [Appellant] together with the totality of the circumstances provided Troopers Ramsden and O'Rourke the reasonable belief that they were permitted entry. Once inside and upon initial observation of [Appellant], Troopers Ramsden and O'Rourke observed [Appellant] to display many indicators of

intoxication which were consistent with what was reported by . . . Kline. For these reasons, this court denied the [Appellant's] oral pre-trial motion to suppress.

Trial Ct. Op., 4/28/25, at 5-6 (some formatting altered).

After our review of the record, we conclude that the trial court's findings of fact and conclusions of law are not supported by the record and free of legal error. *See McLean*, 302 A.3d at 215. Specifically, we believe that, based upon the totality of the circumstances, it was error to conclude that Appellant provided unequivocal, specific, and voluntary consent for Trooper Ramsden to enter his home. *See Metz*, 332 A.3d at 100; *Gibson*, 638 A.2d at 207.

Regarding Appellant's alleged consent, Trooper Ramsden testified as follows:

[The Commonwealth:] And what happened after you had that interaction with the neighbor?

[Trooper Ramsden:] I approached Apartment 15, which was the open door, knocked on it about three times. **And then a male inside sounded like he said, yes, something along those lines.** And then made contact with [Appellant] inside the apartment.

[The Commonwealth:] Okay. So when you knocked on the door, do you recall saying anything?

[Trooper Ramsden:] I announced who I was, opened the door some more, and then made contact with [Appellant] and stepped in.

[The Commonwealth:] **And from what you heard from [Appellant], did you understand that to be an invitation to come in and speak to him?**

[Trooper Ramsden:] **I took it as an invitation, yes.**

N.T., 2/3/25, at 43-44 (emphasis added).

Accordingly, the record reflects that Appellant's alleged consent to enter the premises was an affirmative response to three knocks at his door, which was ajar.[4] Appellant's response was not unequivocal and did not provide the officers with specific consent to enter Appellant's home. **See Gibson**, 638 A.2d at 207; **see also Commonwealth v. Powell**, 994 A.2d 1096, 1102-03 (Pa. Super. 2010) (affirming suppression where a defendant responded "yeah or something to that effect" to an officer's inquiry of whether the defendant had a problem with officers searching his vehicle because the response did not provide unequivocal and specific consent). Trooper Ramsden did not testify that Appellant's statement was an affirmative response to a question regarding whether the police could enter or search Appellant's apartment.[5] Additionally, while Trooper Ramsden testified that he understood Appellant's response as an invitation to enter, Trooper Ramsden's subjective understanding of Appellant's statement is irrelevant to our analysis as the relevant inquiry in determining the scope of consent is what a reasonable

---

[4] While the trial court credits Trooper O'Rourke's testimony in its opinion, **see** Trial Ct. Op., 4/28/25, at 5-6, the record reflects that Trooper O'Rourke only testified that Appellant "invited Trooper Ramsden into the apartment." **See** N.T., 2/3/25, at 35-36. Trooper O'Rourke did not provide any other details about the initial interaction between Appellant and Trooper Ramsden nor the specific wording of Appellant's alleged "invitation."

[5] The record does not establish that Trooper Ramsden asked any questions before opening Appellant's door. **See** N.T., 2/3/25, at 43-44. In fact, it is unclear if Trooper Ramsden announced who he was before or after he knocked on Appellant's door and heard Appellant's response. **See id.**

person would have understood the exchange between the officer and the suspect. *See Valdivia*, 195 A.3d at 862.

Finally, we conclude that the trial court's reliance on *Quiles* is misplaced. *See* Trial Ct. Op. at 4-6 (citing *Quiles*, 619 A.2d at 294-95). In *Quiles*, a panel of this court addressed a claim that police did not lawfully enter a defendant's home. *See Quiles*, 619 A.2d at 294. In that case, police arrived at the defendant's home after having previously recovered evidence that a female lived at the residence. *See id.* Once outside and without announcing their identity or purpose, police knocked on the door and heard a female voice state "come in." *See id.* Ultimately, this court held that because, "as a matter of law," a phrase like "come in" cannot be construed as anything other than consent to enter a premises, police were not required to announce their identity or purpose and that it was "reasonable for officers to assume that an individual answering a knock on the door with a command to 'come on in' has the apparent authority to consent to an entry into the premises." *See id.* at 294-95, 297 (citing *Commonwealth v. Morgan*, 534 A.2d 1054, 1056 (Pa. 1986)).

Here, Appellant did not direct the officers to "come in" to his residence. Instead, the record establishes that Appellant responded to the knocks at his door with "yes." *See* N.T., 2/3/25, at 43-44. Unlike the phrase "come in," Appellant's response did not unequivocally provide consent to enter and is capable of being construed as something completely different than consent to

enter the premises.[6]  Accordingly, unlike "come in," we cannot conclude that a "yes" in response to knocks at a door can only be construed as consent to enter as a matter of law.  ***See Gallagher***, 263 A.3d at 1212 (stating that it is the Commonwealth's burden to establish valid consent and that, because consent involves waiver of a substantial constitutional right, this court "will indulge every reasonable presumption against such waiver").  Because Appellant did not utter the phrase "come in" or a substantially similar phrase, we find ***Quiles*** distinguishable.

Since police did not have consent to enter Appellant's home, the trial court erred in denying suppression.  ***See McLean***, 302 A.3d at 215.  Accordingly, we must reverse the trial court's order denying suppression, vacate Appellant's judgment of sentence, and order a new trial at which the Commonwealth will not be permitted to introduce the illegally obtained evidence.  ***See Mattis***, 252 A.3d at 656.[7]

Judgment of sentence vacated.  Order denying suppression reversed. Case remanded for further proceedings.  Jurisdiction relinquished.

_____

[6] As Appellant argues, in this context "yes" could "easily be interpreted as a question" inquiring about the person at the door's purpose for knocking. ***See*** Appellant's Brief at 41.  Additionally, for example, a "yes" response in this context could be construed as acknowledgment that the knock was heard by someone inside and that the person inside is making their way to the door.

[7] In light of our disposition, we need not address Appellant's remaining claim.

- 11 -

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


DATE:  2/5/2026