In re Edward E. HARTMAN, District Justice In and For Magisterial District 31–3–01 Lehigh County.

No. 5 JD 04.

Court of Judicial Discipline
of Pennsylvania.

Feb. 11, 2005.

Before: DEBBIE O'DELL SENECA, P.J., JOSEPH A. HALESEY, ROBERT L. CAPOFERRI, PAUL P. PANEPINTO, LAWRENCE J. O'TOOLE, WILLIAM H. LAMB, and MARC SANDLER, JJ.

OPINION BY Judge O'TOOLE.

## I. *INTRODUCTION*

The Judicial Conduct Board (Board) filed a Complaint with this Court on October 29, 2004 against District Justice Edward E. Hartman (Respondent) consisting of five counts which charge Respondent as follows:

1. Violation of Rule 15(B)(1) of the Rules Governing Standards of Conduct of District Justices (Count 1),
2. Violation of Rule 15(B)(2) of the Rules Governing Standards of Conduct of District Justices (Count 2),
3. Violation of Rule 11 of the Rules Governing Standards of Conduct of District Justices (Count 3),
4. Violation of Rule 4(D) of the Rules Governing Standards of Conduct of District Justices (Count 4), and
5. Violation of Rule 2(A)(1) of the Rules Governing Standards of Conduct of District Justices (Count 5).

These charges arise:

out of Respondent's efforts to secure the election of his wife to the office of District Justice which he was about to vacate, and to obtain political support for her candidacy (Counts.1 and 2);

out of his use of his office and courtroom for the solicitation and collection of funds for various charitable and community organizations and activities in which he was interested (Count 3); and

out of a telephone call Respondent received from an individual whose parking violation hearing was scheduled before Respondent (Count 4), as well as

out of a remark Respondent made at that hearing (Count 5).

The Board and the Respondent have submitted stipulations of fact in lieu of trial under C.J.D.R.P. No. 502(D)(1) and a waiver of trial. The Court accepts those stipulations of fact in pertinent part, recited below, as the facts necessary for the determination of this case.

## II. *FINDINGS OF FACT*

1. Pursuant to Article V, § 18 of the Constitution of the Commonwealth of Pennsylvania and Judicial Conduct Board Rule of Procedure 31(A)(3), promulgated by the Pennsylvania Supreme Court on March 20, 1995 (amended 1996), the Board is granted authority to determine whether there is probable cause to file formal charges, and, when it concludes that probable cause exists, to file formal charges, against a justice, judge or justice of the peace, for proscribed conduct and to present the case in support of such charges before the Court of Judicial Discipline.

2. Since on or about January 4, 1982, the Respondent has served as District Justice for Magisterial District 31–3–01 in Lehigh County encompassing the Townships of Heidelberg, Lynn and Washington; and the Borough of Slatington, with an office located at 106 South Walnut Street, Slatington, Pennsylvania 18080. The Respondent is mid-way through his fourth term of office. The Respondent's retirement will occur on or about January 6, 2006.

3. In the early part of 2002, the Respondent notified authorities, including Lehigh County President Judge William H. Platt, of his intention to retire from his judicial position. In addition, the Respondent forwarded paperwork regarding his pending retirement to appropriate Commonwealth authorities.

4. Three (3) individuals expressed interest in succeeding him and arranged to be interviewed by a selection committee from the Northern Lehigh Area Republican Party.

5. With the Respondent's stated intention to retire, he began a concerted effort to have his spouse, Sharon Rios Hartman, who also served as his office secretary, to succeed him in his ("soon-to-be") vacated office.

6. In or about March–April 2002, the Respondent personally approached individuals including political officials, a law enforcement official, an Assistant Public Defender and numerous Lehigh County Republican Officials, requesting that they write a letter of endorsement to be brought to the attention of The Honorable James Rhoades, State Senator, or ("To Whom It May Concern") urging support for the appointment of his wife and office secretary, Sharon Rios Hartman, to his soon-to-be vacated office.

7. In or about March–April 2002, the Respondent accompanied his spouse/secretary, Sharon Rios Hartman, an announced candidate for the ("soon-to-be") vacated office to a Republican Party Committee Meeting at which Sharon Rios Hartman and two other candidates presented their credentials and sought the official endorsement of the Lehigh County Republican Party.

8. Sharon Rios Hartman did not receive the official endorsement of the Lehigh County Republican Party.

9. The Respondent permitted the use of his office and courtroom for organizational meetings regarding the annual area Halloween Parade, and over a period of time he personally collected money, on occasion, "over the counter" for charitable activities including the 50th Anniversary of the Lions Club, the Lions Club Community Steak Fry, the Great Slatington Duck Race and the sale of T-shirts for fundraising.

10. The Respondent did not sell tickets for these events from his office.

11. The Respondent permitted advertisements for charitable and community activities to appear in the confines of his office waiting area.

12. On or about June 21, 2002, the Respondent presided over a Summary Trial in the matter of *Commonwealth of Pennsylvania v. Kenneth Grossman,* TR–0000323–02, a matter wherein Lauren Ganser, Parking Enforcement Officer of the Slatington Police Department issued Parking Citation Number 2836 dated February 26, 2002, regarding a two (2) hour parking violation on a Ford Ranger, bearing Pennsylvania License Number DRS 1134.

13. Present in the courtroom, besides the Respondent, was Parking Enforcement Officer Lauren Ganser, the Defendant Grossman and his minor son.

14. The Respondent convened the hearing and revealed that he had spoken telephonically with Kenneth Grossman, the Defendant, prior to this hearing; a call initiated by Kenneth Grossman. The Respondent related to the parties (from his conversation), that Grossman had explained to him that his plates had been stolen off his vehicle. Parking Enforcement Officer Lauren Ganser was not a party to that conversation and this was the first she knew of it.

15. The Respondent stated in court that he had told the Defendant, Kenneth Grossman, on the telephone, that he (Grossman) would have an opportunity at this hearing to explain his situation and that he should go and seek an attorney's advice.

16. After testimony, the Respondent found Kenneth Grossman, the Defendant, not guilty and then stated in the presence of the Defendant, Kenneth Grossman and his minor son:

The Slatington Police Department does not do their jobs and "the whole bunch of you should all turn in your badges and become Boy Scouts and Girl Scouts."

17. The Respondent made the statement to diffuse the anger of Mr. Grossman with a little humor.

18. The Respondent indicates that this was said in jest because he believes he has very good relations with the Slatington Police Department as he is an ex-police officer himself who rose to the level of detective in police department rank.

19. These remarks were not directed to or personally critical of Parking Enforcement Officer Lauren Ganser, but rather were directed by the Respondent in a public setting towards the Slatington Police Department and its officers in general.

20. The Respondent indicated he has since apologized to Parking Enforcement Officer Ganser and the Police Chief of Slatington.

## III. DISCUSSION

**Counts 1 and 2.**

We will first address the charges made in Counts 1 and 2 which relate to Respondent's alleged violation of Rules 15(B)(1) and 15(B)(2) (Counts 1 and 2 respectively) which grow out of Respondent's activities in support of his wife's candidacy for the office of District Justice for Magisterial District 31-3-01 in Lehigh County, the office he presently held and from which he had announced his intention to retire.

We will first ascertain what political activities are prohibited by the Rules and then examine Respondent's conduct to determine whether it falls within the description of the proscribed activities. We need not be concerned with whether the Board has sufficiently established that the Respondent did what he is alleged to have done since the parties have stipulated to that.

Rules 15(B)(1) and 15(B)(2) provide in those parts pertinent here:

B. A district justice ... shall not:

(1) ... publicly endorse candidates for political office.

(2) engage in partisan political activity ... or attend political ... gatherings ....

The specific activities in which Respondent admittedly engaged included:

1. Approaching numerous Lehigh County Republican officials seeking their endorsement of his wife's candidacy for the office of District Justice, a political office; and

2. Attending a Republican Party Committee Meeting where his wife sought the official endorsement of the Lehigh County Republican Party for that office.

This is the first time that this Court has been called upon to adjudicate alleged violations of the prohibition of political activity contained in Rule 15 of the Rules Governing Standards of Conduct of District Justices, but we need no precedential assistance to determine that Respondent's activities described above constitute violations of Rule 15. In fact, Respondent's activities are stipulated to

have been "a concerted effort" to advance the political aspirations of his wife (see Finding of Fact No. 5).

When Respondent approached numerous Lehigh County Republican officials seeking their endorsement of his wife as a candidate for District Justice (see Finding of Fact No. 6) he was "publicly endors[ing a] candidate for political office" and, thereby violating Rule 15(B)(1). That conduct also constituted "engage[ing] in partisan political activity" and thus was a violation of Rule 15(B)(2).

When Respondent accompanied his wife to the Republican Party Committee meeting held for the purpose of selecting the candidate for the office of District Justice who would receive official Party endorsement (see Finding of Fact No. 7) Respondent was "engag[ing] in partisan political activity" and "attend[ing a] political gathering" and thus violating Rule 15(B)(2). These conclusions are self-evident; further exposition would be superfluous.[1]

## Count 3.

■ Count 3 charges Respondent with violating Rule 11 of the Rules Governing Standards of Conduct of District Justices. That Rule provides in relevant part:

A district justice, shall not solicit funds for any educational, religious, charitable, fraternal, or civic organization, or use or permit the use of the prestige of his office for that purpose ... .

In paragraph 9 of the stipulations of fact filed by the parties in this case (see Finding of Fact No. 9) Respondent admits that he "personally collected money, on occasion, over the counter, for charitable activities including the 50th Anniversary of the Lions Club, the Lions Club Community Steak Fry, and the Great Slatington Duck Race."

We require little persuasion to be certain that the Steak Frys and Duck Races staged in Slatington, Pennsylvania are lots of fun and conducted for worthy causes. We also recognize that a judge's helping those worthy causes by soliciting funds for them might be regarded as a nice thing to do—or, at worst, innocuous. However, such conduct by a judge is clearly forbidden by Rule 11.[2] The prohibition is unquestionably broad, admitting, as it does, of no exception, and, we believe, it is justifiably so.

The purpose of the prohibition is to avoid misuse of the judicial office. The rule addresses the dual fears that potential donors either may be intimidated into making contributions when asked by a judge,[3] or that they may expect favors

---

1. Although—and we have stated this before, see, e.g., *In re Toczydlowski,* 853 A.2d 24, 26 (Pa.Ct.Jud.Disc.2004) and *In re Crahalla,* 747 A.2d 980, 988 (Pa.Ct.Jud.Disc.2000)—we are not bound by decisions made in other jurisdictions, in the absence of any cases in this jurisdiction on the subject, we mention that other courts in other jurisdictions have enforced similar proscriptions on political activities similar to those in which this Respondent engaged. These cases are collected by Professors Shaman, Lubet and Alfini in their treatise, *Judicial Conduct and Ethics* (Third Edition, 2000) at § 11.07. These cases include cases where judges were disciplined for actively supporting the efforts of family members seeking election to political office, e.g.,

*In re McGregor,* 614 So.2d 1089 (Fla.1993) (judge disciplined for actively campaigning for spouse in spouse's campaign for county clerk); *In re Codispoti,* 190 W.Va. 369, 438 S.E.2d 549 (1993) (judge disciplined for involvement in wife's judicial campaign); *In re Turner,* 573 So.2d 1 (Fla.1990) (judge disciplined for active involvement in son's campaign for county judge).

2. Such conduct is likewise forbidden by Canon 5(B)(2) of the Code of Judicial Conduct.

3. The intimidation, of course, emanates from a fear that declination of the request will produce the judge's displeasure, even disfavor—a decidedly disadvantageous state of af-

from him in return for their "generosity." *See, Judicial Conduct and Ethics, supra,* at § 9.06. It has been observed, as well, that most charitable organizations can raise funds perfectly well without the involvement of judges, so no downside was seen to a broad prohibition. *See,* Thode, *The Development of the Code of Judicial Conduct,* 9 San Diego L. Rev. 793, 800 (1972).

Consequently, we find that Respondent's conduct described in Finding of Fact No. 9 was a violation of Rule 11 of the Rules Governing Standards of Conduct of District Justices.

**Count 4.**

■ Count 4 charges Respondent with violating Rule 4(D) of the Rules Governing Standards of Conduct of District Justices. That Rule provides in the portion relevant here:

> A district justice shall ... except as authorized by law, neither initiate nor consider ex parte or other communications concerning a pending or impending proceeding.

The facts upon which the Board bases its charge that Respondent violated Rule 4(D) include:

1. On June 21, 2002, Respondent conducted a summary proceeding in which one Kenneth Grossman was charged with an overtime parking violation. The ticket had been issued by Parking Enforcement Officer Lauren Ganser of the Slatington Police Department. (See Finding of Fact No. 12.)

2. At the outset of the hearing Respondent stated that, prior to the hearing, he had received a telephone call from the defendant, Mr. Grossman, who told him that his license plates had been stolen and, presumably, were residing on the vehicle which had been ticketed,[4] which, presumably, was not owned by Mr. Grossman.[5] (See Finding of Fact No. 14.)

3. At the outset of the hearing Respondent further stated that he advised Mr. Grossman on the telephone that he would have the opportunity to "explain his situation" at the hearing and that he "should go and seek an attorney's advice." (See Finding of Fact No. 15.)

4. Present at the hearing were Officer Ganser, Defendant, Grossman, and his minor son. (See Finding of Fact No. 13.)

5. After testimony, Respondent found Grossman not guilty. (See Finding of Fact No. 16.)

Rule 4(D) applies only to ex parte communications which have to do with proceedings which are "pending" or "impending" before a judicial officer. Presumably, this case was "pending" before Judge Hartman at the time of the ex parte communication because it is logical to assume that Grossman called Judge Hartman only after receiving notice that the case was listed in his court. Although it may be logical to posit these facts, they are nowhere to be found in the Complaint or in the Stipulations. Considering the quantity of facts that are missing concerning the content or the time of the ex parte commu-

---

fairs, especially for those having regular business with the judge.

**4.** "Presumably" because it is nowhere stated in the Complaint or in the Stipulations that Mr. Grossman's license plates were attached to the offending vehicle.

**5.** "Presumably" because it is nowhere stated in the Complaint or in the Stipulations that Mr. Grossman was not the owner of the offending vehicle.

nication we would be hard put to find that the Board has established a violation of the rule by clear and convincing evidence.[6]

Moreover, there is another, more conspicuous, reason for finding that the Board has not established a violation of Rule 4(D): there has been no showing that Respondent, in his disposition of the parking violation charge, either "initiated" or "considered" what Grossman told him on the telephone.

Rule 4(D) provides that:

A district justice shall ... neither *initiate* nor *consider* ex parte ... communications concerning a pending or impending proceeding. (emphasis added).

There is no suggestion that Respondent initiated the conversation with Grossman, quite the opposite—it is stipulated that Grossman called him; and there is no showing that Respondent considered anything Grossman told him on the telephone. As a matter of fact, there is no showing at all of what Judge Hartman considered in disposing of Grossman's parking ticket. The stipulations merely state: "After testimony, the Respondent found Kenneth Grossman, the Defendant, not guilty ...." (See Finding of Fact No. 16.) Thus, this Court is left to guess as to the substance of the testimony, and, as well, to guess as to what it was that Respondent considered in reaching his decision to find Grossman not guilty.[7] With the record in the condition it is, it certainly cannot be said that the Board has established a violation of

Rule 4(D) by clear and convincing evidence; and we find that it has not.

We point out that it is possible (though certainly not established here) that what Respondent heard from Grossman over the telephone was the same as the testimony elicited at the trial. If that were the case, inasmuch as it would be the Respondent's *duty* to consider the trial testimony, he would, in so doing, *ipso facto*, be considering the ex parte communication. We think no one would seriously contend that that would constitute a violation of Rule 4(D). We have said as much in *In re McCutcheon*, 846 A.2d 801, 812–13 (Pa.Ct. Jud.Disc.2004). As it is, however, we do not know what the trial testimony was, i.e., whether it was the same or different, and, in any event, we don't know what the District Justice considered; consequently, the Board has not established that Respondent improperly considered the ex parte communication and thus has failed to carry its constitutional burden.

## Count 5.

The parties have stipulated that after finding Mr. Grossman not guilty, the Respondent stated, in the presence of Mr. Grossman and his son:

The Slatington Police Department does not do their jobs and "the whole bunch of you should all turn in your badges and become Boy Scouts and Girl Scouts."

For this the Board has charged Respondent with a violation of Rule 2(A)(1)[8] of the Rules Governing Standards of Conduct of District Justices.

---

6. See Pa. Const., Art. V, § 18(b)(5).

7. We realize that it may be difficult, in any particular case, to establish what it was that a judge considered in the process of adjudication and that the process included consideration of ex parte communications—that, however, does not make the Board's burden to do

so any less compulsory. *See, e.g., In re McCutcheon*, 846 A.2d 801, 815–16 (Pa.Ct. Jud.Disc.2004).

8. The language of the Rule quoted in Count 5 of the Complaint is the language of Rule 2(A). There is no Rule 2(A)(1).

That Rule provides in that part deemed relevant by the Board:

> A district justice shall respect and comply with the law and shall conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.

This Court has dealt previously with alleged violations of Rule 2(A), *see, e.g., In re Toczydlowski*, 853 A.2d 20, 22–23, (Pa. Ct.Jud.Disc.2004), *In re McCutcheon*, 846 A.2d 801, 816–17 (Pa.Ct.Jud.Disc.2004), as well as with alleged violations of Canon 2 of the Code of Judicial Conduct.[9] *See, e.g., In re Cicchetti*, 697 A.2d 297 (Pa.Ct.Jud. Disc.1997) and *In re Smith*, 687 A.2d 1229 (Pa.Ct.Jud.Disc.1996).

> We pointed out in *In re Cicchetti*, that:
>
> Canon 2 ... [is] directed at conduct which would impugn or detract from ... the "integrity and impartiality" of the judiciary. [And that] "Integrity" must be read *in pari materia* ... with "impartiality" in Canon 2.

*Id.*, at 313. We noted further in *Cicchetti* that Canon 2 in general and the word "impartiality" in particular:

> [E]xhort judges to carefully preserve all appearances of even-handedness, of not favoring or appearing to favor either side in a case, of being and appearing free from influence.

*Id.* In *In re Smith*, at 1240 we stated, and repeated in *In re Cicchetti, supra*, at 313:

> Canon 2 in general is directed towards conduct which could potentially cause the public or litigants to believe that a judge is not acting impartially.

9. The language of Canon 2 is identical to the language of Rule 2(A).

10. See the opinion of the Pennsylvania Supreme Court, which, in affirming this Court's holding in *Cicchetti* on Canon 2; stated:

■ While it certainly appears that Respondent's remark was derogatory and even belittling to the Slatington police, we find nothing about the remark which could be said to indicate that Respondent was not acting, or had not acted, impartially. We see nothing in the remark that indicates Respondent had not acted evenhandedly, or that he had been subject to influence by one side or the other in the course of his decision-making process.[10]

That being the case, we find that the Board has not established a violation of Rule 2(A) of the Rules Governing Standards of Conduct of District Justices.

## IV. CONCLUSIONS OF LAW

■ 1. The conduct of the Respondent set forth in Findings of Fact Nos. 3–7 constituted a violation of Rules 15(B)(1) and 15(B)(2) of the Rules Governing Standards of Conduct of District Justices.

2. The conduct of the Respondent set forth in Finding of Fact No. 9 constituted a violation of Rule 11 of the Rules Governing Standards of Conduct of District Justices.

3. The conduct of the Respondent set forth in Findings of Fact Nos. 12–16 did not constitute a violation of Rule 4(D) of the Rules Governing Standards of Conduct of District Justices.

4. The conduct of the Respondent set forth in Findings of Fact Nos. 16–20 did not constitute a violation of Rule 2(A) of the Rules Governing Standards of Conduct of District Justices.

"Canon 2 similarly [like Canon 1] addresses the judicial decision-making process and seeks to avoid the appearance of influence over judicial activities." *In re Cicchetti*, 560 Pa. 183, 201, 743 A.2d 431, 441 (2000).

5. The Respondent is subject to discipline under Article V, § 18(d)(1) of the Pennsylvania Constitution.

SPRAGUE, J., did not participate in the consideration or disposition of this case.

## ORDER

PER CURIAM.

AND NOW, this 11th day of February, 2005, based upon the Conclusions of Law, it is hereby ORDERED:

That, pursuant to C.J.D.R.P. No. 503, the attached Opinion with Findings of Fact and Conclusions of Law be and it is hereby filed, and shall be served on the Judicial Conduct Board and upon the Respondent,

That, either party may file written objections to the Court's Conclusions of Law within ten (10) days of this Order. Said objections shall include the basis therefor and shall be served on the opposing party,

That, in the event that such objections are filed, the Court shall determine whether to entertain oral argument upon the objections, and issue an Order setting a date for such oral argument, and

That, in the event objections are not filed, within the time set forth above, the Findings of Fact and Conclusions of Law shall become final, and this Court will issue an Order setting a date, pursuant to C.J.D.R.P. No. 504, for a hearing on the issue of sanctions.