J-A14027-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
  :   PENNSYLVANIA
  :
v.   :
  :
  :
ERIC LANE   :
  :
  Appellant   :   No. 2094 EDA 2024

Appeal from the Judgment of Sentence Entered July 12, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0006409-2023

BEFORE:   PANELLA, P.J.E., NICHOLS, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY NICHOLS, J.:      **FILED AUGUST 27, 2025**

Appellant Eric Lane appeals from the judgment of sentence imposed

after he was convicted at a nonjury trial of possession of a firearm prohibited,

firearm carried without a license, and carrying a firearm in public in

Philadelphia.[1]   Appellant challenges the trial court's denial of his motion to

suppress.   After review, we affirm based on the trial court's opinion.

The trial court summarized the relevant facts and procedural history of

the matter as follows:

On August 8, 2023, [Philadelphia Police Officer George] Lutz and
his partner Officer [Brian] Canela were on routine patrol in a
marked police vehicle. Both officers were wearing full uniforms.
Officer Lutz was the recorder and sat in the passenger seat. At
approximately 9:00 p.m. the officers were traveling [northbound]
on 39th Street in Philadelphia, Pennsylvania, when they stopped

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 6105, 6106, & 6108, respectively.

to let Appellant cross the street. Appellant was crossing from the 3900 block of Folsom Street to the 3800 block of Folsom Street.

While Appellant was crossing [] Officer Lutz observed a large bulge in Appellant's waistband, weighing down his pants. Officer Lutz alerted Officer Canela. And they waited for Appellant to step into the vehicle's headlights to confirm the observation. The officers turned on Folsom Street, driving parallel to Appellant as he walked on the sidewalk. The officers got ahead of Appellant and stopped the vehicle a half a car ahead of Appellant.

At this time, Officer Lutz opened the passenger door slightly and asked Appellant if he had a license to carry a firearm. Appellant did not respond but looked down at his waistband. Officer Lutz went to step out of the vehicle and before he had one foot on the pavement Appellant grabbed his waistband and took off running in the opposite direction. Officer Lutz pursued Appellant on foot and followed him westbound on Folsom Street and then turned southbound on 39th Street. Officer Lutz caught up to Appellant and grabbed him from behind. Appellant fell on his stomach and was placed in custody. Officer Lutz observed the firearm at the bottom of Appellant's pants and recovered it. Appellant was wearing tight pants that cinched at the bottom. Due to Appellant's flight the firearm moved from his waist and fell to the bottom of his pants. The firearm recovered was a black Glock 17. . . .

On August 29, 2023, Appellant was arrested and charged with Possession of a Firearm Prohibited, Firearm Carried Without a License, Carry a Firearm in Public in Philadelphia, and Evading Arrest of Detention on Foot. A motion to suppress was litigated before [the trial court] on April 25, 2024. [The trial court] granted the motion to suppress as to Appellant's statements after he was arrested but before he was given his **Miranda**[2] rights. However, [the trial court] denied the motion to suppress as to physical evidence, the recovered firearm. Before immediately proceeding to a waiver trial the Commonwealth *nolle* [*prossed*] the charge of Evading Arrest of Detention on Foot.

[The trial court] found Appellant guilty of Possession of a Firearm Prohibited, Firearm Carried Without a License, and Carry a Firearm in Public in Philadelphia. Sentencing was deferred and [the trial court] ordered a mental health evaluation and a presentence investigation. At sentencing on July 12, 2024, [the trial court]

_____

[2] **Miranda v. Arizona**, 384 U.S. 436 (1966).

sentenced Appellant to five to ten years of incarceration followed by one year of re-entry supervision.

Appellant filed a post-sentence motion to reconsider the sentence on July 22, 2024. [The trial court] denied [Appellant's] motion to reconsider the sentence on July 30, 2024. The Appellant then filed a notice of appeal to [this Court] on August 5, 2024. On August 6, 2024, a [Pa.R.A.P.] 1925(b) order was issued [by the trial court]. On September 19, 2024, the Appellant timely filed a statement of errors[.]

Trial Ct. Op, 10/4/24, at 2-3 (unpaginated) (footnotes omitted and some formatting altered).

On appeal, Appellant raises the following issues:

1. Was Appellant seized without reasonable suspicion prior to his flight from police?

2. Did the trial court err in considering the "high-crime" character of the area in which Appellant was seized as a factor supporting the propriety of the seizure under the Pennsylvania Constitution?

3. Even if the rate of crime in a given area was a proper consideration, did the Commonwealth fail to prove that the area of arrest was in fact a "high-crime area"?

Appellant's Brief at 2 (some formatting altered).

All of Appellant's claims on appeal relate to the denial of his motion to suppress the firearm police found on his person. *See id.*

Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are

- 3 -

supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where . . . the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the court[ ] below are subject to our plenary review.

*Commonwealth v. McLean*, 302 A.3d 211, 215 (Pa. Super. 2023) (citing *Commonwealth v. Jones*, 988 A.2d 649, 654 (Pa. 2010)) (some formatting altered).

Following our review of the record, the parties' briefs, the relevant law, and the trial court's well-reasoned analysis, we affirm on the basis of the trial court's opinion.[3]  Specifically, we agree with the trial court's conclusions that the initial interaction between Appellant and police prior to Appellant's flight was a mere encounter; that Appellant's flight was unprovoked; that the

---

[3] The trial court opinion also addressed a discretionary sentencing claim that Appellant did not argue in his appellate brief.  *See* Trial Ct. Op. at 8-11; Appellant's Brief at 2.  Since this issue was not developed in Appellant's brief, it is abandoned on appeal and, therefore, waived.  *See Commonwealth v. Felder*, 247 A.3d 14, 20 (Pa. Super. 2021); *see also* Pa.R.A.P. 2116(a) (stating "[n]o question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby").

We also note that the trial court opinion contains some typographical errors.  All references to 18 Pa.C.S. § 5104 should refer to 18 Pa.C.S. § 5104.2.  On page four, "i. This Court properly found that" should be omitted from the quotation of Appellant's statement of errors.  The citations on page six should read "*Commonwealth v. Lewis*, 636 A.2d 619, 624 (Pa. 1994)," "*Commonwealth v. Ickes*, 873 A.2d 698, 701 (Pa. 2005)," and "*Ickes*, 873 A.2d at 701-02."  Subheading "C" on page seven should state that "the seizure was supported by probable cause."  Additionally, the citation on pages seven to eight should read "*See In re M.D.*, 781 A.2d 192, 196 (Pa. Super. 2001)."

- 4 -

Commonwealth established that the location of the interaction was a high-crime area; and that, based upon the totality of the circumstances, which included Appellant's unprovoked flight in a high-crime area, police had reasonable suspicion to investigate Appellant[4] and subsequently had probable cause to recover the firearm. **See** Trial Ct. Op. at 4-8. Therefore, we conclude that the trial court's findings of fact and conclusions of law regarding Appellant's motion to suppress are supported by the record and free of legal error. **See McLean**, 302 A.3d at 215. Accordingly, we affirm.[5]

Judgment of sentence affirmed. Jurisdiction relinquished.

_____

[4] We note that the trial court included in its determination that officers had reasonable suspicion that Appellant's failure to respond to Officer Lutz's question of whether he had a license to carry a firearm. **See** Trial Ct. Op. at 6, 8. However, as the trial court noted in its opinion, "[i]f one has the right to completely walk away, one has, *a fortiori*, the right to decline to answer questions. Refusing to provide the requested information is not criminal conduct." **Id.** at 6 (citing **Ickes**, 873 A.2d at 701-02). Nonetheless, Appellant's failure to respond to Officer Lutz's question was not the sole basis for the trial court's conclusion that the officers had reasonable suspicion. In concluding that there was reasonable suspicion, the trial court also relied on Officer Lutz's observation of the bulge in Appellant's waistband, Appellant's "furtive eye movements to his waistband" in response to the officer's question, Appellant's act of grabbing his waistband, and his subsequent unprovoked flight in a high-crime area. **Id.** at 6, 8. We are convinced that these factors, without considering Appellant's failure to respond, support a finding of reasonable suspicion. **See Commonwealth v. Rice**, 304 A.3d 1255, 1262-63 (Pa. Super. 2023) (concluding police had reasonable suspicion where, in a high crime area, officers observed a bulge appearing to be a firearm in defendant's waistband before defendant fled without provocation and referencing cases with similar holdings).

[5] The parties are directed to attach a copy of the trial court's opinion in the event of further proceedings.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/27/2025

## THE COURT OF COMMON PLEAS
## FOR THE COUNTY OF PHILADELPHIA
## CRIMINAL TRIAL DIVISION

| | | |
|---|---|---|
| **COMMONWEALTH** | : | **CP-51-CR-0006409-2023** |
| **OF PENNSYLVANIA** | : | |
| | : | |
| **v.** | : | |
| | : | **2094 EDA 2024** |
| **ERIC LANE** | : | |
| | : | |



CP-51-CR-0006409-2023 eali Comm. v. Lane, Eric
Opinion

9129496741

**OPINION**

**Taylor-Smith, N.**                                                    **Date: October 4, 2024**

### STATEMENT OF FACT

The appellant, Eric Lane (hereinafter "Appellant") was subject to a seizure by the Philadelphia Police Department on August 8, 2023. Based on the stop and subsequent firearm recovery, Appellant was arrested for Possession of a Firearm Prohibited, Firearm Carried Without a License, Carry a Firearm in Public in Philadelphia, and Evading Arrest of Detention on Foot.[1]

At the motion to suppress hearing on May 31, 2023, the court heard testimony from Police Officer George Lutz (hereinafter "Officer Lutz"), Police Officer Brian Canela (hereinafter "Officer

---

[1] Secure Court Docket, at 1, 3, 4; 18 Pa.C.S.A. §§ 5104, 6105, 6106, 6108.

Canela"), and argument from Commonwealth and Appellant. At the time of his testimony Officer Lutz had been a police officer with the sixteenth district for seven and a half years.[2]

On August 8, 2023, Officer Lutz and his partner Officer Canela were on routine patrol in a marked police vehicle.[3] Both officers were wearing full uniforms.[4] Officer Lutz was the recorder and sat in the passenger seat.[5] At approximately 9:00 p.m. the officers were traveling North Bound on 39th Street in Philadelphia, Pennsylvania, when they stopped to let Appellant cross the street.[6] Appellant was crossing from the 3900 block of Folsom Street to the 3800 block of Folsom Street.

While Appellant was crossing in Officer Lutz observed a large bulge in Appellant's waistband, weighing down his pants.[7] Officer Lutz alerted Officer Canela. And they waited for Appellant to step into the vehicle's headlights to confirm the observation.[8] The officers turned on Folsom Street, driving parallel to Appellant as he walked on the sidewalk.[9] The officers got ahead of Appellant and stopped the vehicle a half a car ahead of Appellant.[10]

At this time, Officer Lutz opened the passenger door slightly and asked Appellant if he had a license to carry a firearm.[11] Appellant did not respond but looked down at his waistband.[12] Officer Lutz went to step out of the vehicle and before he had one foot on the pavement Appellant grabbed his waistband and took off running in the opposite direction.[13] Officer Lutz pursued Appellant on foot and followed him westbound on Folsom Street and then turned southbound on 39th Street.[14] Officer Lutz caught up to Appellant and grabbed him from behind. Appellant fell on his stomach and was placed in custody.[15] Officer Lutz observed the firearm at the bottom of Appellants pants and recovered it. Appellant was wearing tight pants that cinched at the bottom. Due to Appellant's

---

[2] N.T. 4/25/24, at 5.
[3] Id. at 6-7.
[4] Id. at 7.
[5] Id. at 17.
[6] Id. at 7-9.
[7] Id. at 9.
[8] Id.
[9] Id. at 9-10.
[10] Id. at 10.
[11] Id.
[12] Id.
[13] Id. at 35-36.
[14] Id. at 10.
[15] Id. at 11.

flight the firearm moved from his waist and fell to the bottom of his pants.[16] The firearm recovered was a black Glock 17. Appellant was charged with possession of the firearm.[17]

## PROCEDURAL HISTORY

On August 29, 2023, Appellant was arrested and charged with Possession of a Firearm Prohibited, Firearm Carried Without a License, Carry a Firearm in Public in Philadelphia, and Evading Arrest of Detention on Foot.[18] A motion to suppress was litigated before this Court on April 25, 2024. This Court granted the motion to suppress as to Appellant's statements after he was arrested but before he was given his *Miranda* rights. However, this Court denied the motion to suppress as to physical evidence, the recovered firearm. Before immediately proceeding to a waiver trial the Commonwealth *nolle prosed* the charge of Evading Arrest of Detention on Foot.[19]

This Court found Appellant guilty of Possession of a Firearm Prohibited, Firearm Carried Without a License, and Carry a Firearm in Public in Philadelphia.[20] Sentencing was deferred and this Court ordered a mental health evaluation and a presentence investigation. At sentencing on July 12, 2024, this Court sentenced Appellant to five to ten years of incarceration followed by one year of re-entry supervision.[21]

Appellant filed a post-sentence motion to reconsider the sentence on July 22, 2024. This Court denied the defense's motion to reconsider the sentence on July 30, 2024. The Appellant then filed a notice of appeal to the Pennsylvania Superior Court on August 5, 2024. On August 6, 2024, a 1925(b) order was issued.[22] On September 19, 2024, the Appellant timely filed a statement of errors and raised the following issues:

A. The trial court erred in denying Appellant's motion to suppress physical evidence under the Fourth and Fourteenth Amendments to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution. Appellant's seizure was unlawful, and the recovery of the firearm in question was the fruit of the illegality for the following reasons:

---

[16] *Id.*
[17] *Id.* at 13.
[18] Secure Court Docket, at 1, 3, 4; 18 Pa.C.S.A. §§ 5104, 6105, 6106, 6108.
[19] 18 Pa.C.S.A. §§ 5104.
[20] 18 Pa.C.S.A. §§ 6105, 6106, 6108.
[21] Secure Court Docket, at 9.
[22] *Id.* at 9-11.

    i.    Appellant was already seized without reasonable suspicion prior to his flight from police.

    ii.   Even after Appellant fled, police lacked reasonable suspicion justify a seizure, where the prosecution presented insufficient evidence to establish that the location in which the flight occurred was a "high-crime area."

        i.  This Court properly found that

    iii.  Even if the location in which Appellant fled had been established as a "high-crime area," it is a violation of Article I, Section 8 of the Pennsylvania Constitution to consider the level of crime in the surrounding area, over which the person fleeing has no control, as a factor in determining reasonable suspicion.

B. The Court erred and abused its discretion in imposing a sentence of five to ten years of incarceration, insofar as it failed to comply with the requirements of 42 Pa.C.S. § 9721, failed to adequately consider mitigation information, including Appellant's background, character, acceptance of responsibility and rehabilitative needs, and failed to state on the record adequate reasons for its sentence. The resulting sentence was grossly disproportionate to the offense, far in excess what was necessary for the protection of the public, contrary to the fundamental norms underlying the sentencing process, and manifestly unreasonable and excessive.

## DISCUSSION

## I.    This Court properly denied the suppression of evidence because there was a lawful basis to recover the firearm abandoned by Appellee in the course of his unprovoked flight.

The evidence presented proved that the firearm was lawfully recovered after a proper seizure of Appellant. Thus, this Court properly denied the suppression of the firearm from evidence.

The Fourth Amendment to the United States Constitution, incorporated to states by and through the Fourteenth Amendment to the United States Constitution, and Article I, Section 8 of the Pennsylvania Constitution, protect citizens from "unreasonable searches and seizures." U.S. Const. amend. IV. The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

*Id.* Similarly, Article I, Section 8 provides:

> The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.

Pa. Const. art. 1, Section 8.

Pennsylvania courts require law enforcement officers to demonstrate ascending levels of suspicion to justify their interactions with citizens. *See Commonwealth v. Beasley,* 761 A.2d 621 (Pa. Super. 2000). There are three forms of police-citizen interaction: (1) a mere encounter, (2) an investigatory detention, often described as a *Terry* stop, and (3) a custodial detention. *See Commonwealth v. Boswell,* 721 A.2d 336 (Pa. 1998); *Commonwealth v. Jefferson,* 256 A.3d 1242, 1247-48 (Pa. Super. 2021) *(en banc)* (citations, quotation marks and ellipses omitted); *see also Terry v. Ohio,* 88 S.Ct. 1868 (1968).

> A mere encounter can be any formal or informal interaction between an officer and a citizen, but will normally be an inquiry by the officer of a citizen. The hallmark of this interaction is that it carries no official compulsion to stop or respond and therefore need not be justified by any level of police suspicion.
>
> In contrast, an investigative detention carries an official compulsion to stop and respond. Since this interaction has elements of official compulsion it requires reasonable suspicion of unlawful activity.
>
> Finally, a custodial detention occurs when the nature, duration and conditions of an investigative detention become so coercive as to be, practically speaking, the functional equivalent of an arrest. This level of interaction requires that the police have probable cause to believe that the person so detained has committed or is committing a crime.

*Commonwealth v. Jefferson,* 256 A.3d 1242, 1247-48 (Pa. Super. 2021) *(en banc)* (citations, quotation marks and ellipses omitted).

In *Wong Sun v. United States,* 371 U.S. 471 (1963), the United States Supreme Court articulated the test for determining whether evidence must be suppressed. There, the Court held that evidence constitutes poisonous fruit, and, thus, must be suppressed, if, "granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by

exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Id*. at 488 (citation and internal quotation marks omitted). The inquiry simply is whether the evidence was obtained via exploitation of the initial illegality. So long as the taint of the initial illegality has not been removed by other circumstances, the inquiry involves nothing more. *Id*. Thus, any evidence recovered subsequent to an illegal seizure must be suppressed as fruit of the poisonous tree.

A.    This Court properly found that the interaction between Appellant and the police before his flight was a mere encounter.

"The Fourth Amendment does not proscribe all contact between the police and citizens . . . ." *INS v. Delgado*, 466 U.S. 210, 215 (1984). To determine whether a particular encounter constitutes a seizure: "'[A] court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' request or otherwise terminate the encounter.'" *Commonwealth v. Lewis*, 636 A.2d 619 (Pa. 1994) (citing *Florida v. Bostick*, 510 U.S. 429 (1991)). "Outside of a legitimate stop, police retain the right to ask people to identify themselves; if a mere encounter, however, people retain the right not to do so." *Commonwealth v. Ickes*, 873 A.2d 698 (Pa. 2005). "[I]f one has the right to completely walk away, one has, a *fortiori*, the right to decline to answer questions. Refusing to provide the requested information is not criminal conduct." *Ickes*, 873 A.2d at 566-67. Therefore, a mere encounter does not constitute a seizure.

The evidence at the motion to suppress demonstrated that the interaction between Appellant and Officer Lutz started as a mere encounter and then elevated into a seizure. A mere encounter occurred when Officer Lutz opened the police vehicle's passenger side door and asked Appellant if he had a license to carry a firearm.[23] Officer Lutz said nothing to Appellant for him to believe he was not free to leave, and thus not seized. Officer Lutz had not fully exited the vehicle before the Appellant, failed to respond to the inquiry, made furtive eye movements to his waistband, grabbed at his waistband and fled in the opposite direction.[24] Therefore, Appellant's subsequent flight was unprovoked. The foot pursuit and subsequent arrest of Appellant did eventually rise to the level of a seizure. The seizure was supported by the necessary probable cause.

---

[23] N.T. 4/25/24, at 10.
[24] *Id*. at 35-36.

B.    This Court properly found that the testimony of Officer Lutz provided the evidence to establish that the location in which the flight occurred was a high-crime area.

Officer Lutz's testimony provided sufficient evidence to classify the area as a high-crime area. Officer Lutz testified that the sixteenth district had been regularly patrolling the area where they arrested Appellant.[25] Officer Lutz stated that the "area [is] known for narcotics and multiple VUFA" arrests.[26] He went on to say that the police are aware that on "3800 Folsom, they sell crack on that block."[27] Officer Lutz gave a more specified example and explained that "[t]here was a homicide on 3900 Folsom a few weeks before, so we were just patrolling the area."[28] The fact that law enforcement is aware of specific crimes that are a frequent occurrence in the area, even down to the block, indicates it is a high-crime area.

C.    This Court took in the totality of the circumstances surrounding the Appellant's seizure when it found the seizure was supported by propbable cause.

In deciding whether reasonable suspicion exists for an investigatory detention, the fundamental inquiry is an objective one, namely, whether the facts available to the officer at the moment of the intrusion warrant a man of reasonable caution in the belief that the action taken was appropriate. See In re M.D., 781 A.2d 192, 197 (Pa. Super.2001).

> The fundamental inquiry is an objective one, namely, whether "the facts available to the officer at the moment of the [intrusion] 'warrant a man of reasonable caution in the belief' that the action taken was appropriate." This assessment, like that applicable to the determination of probable cause, requires an evaluation of the totality of the circumstances, with a lesser showing needed to demonstrate reasonable suspicion in terms of both quantity or content and reliability.

Commonwealth v. Zahir, 751 A.2d 1553, 1556 (Pa. 2000) (citations omitted). Among the factors to be considered in establishing a basis for reasonable suspicion are tips, the reliability of the informants, time, location, and suspicious activity, including flight. See Commonwealth v. Freeman, 757 A.2d 903, 908 (Pa. 2000) (noting that "nervous, evasive behavior such as flight is a pertinent factor in determining reasonable suspicion"). Flight by the suspect can be considered suspicious activity, but flight alone does not give rise to reasonable suspicion. In re M.D., 781

---

[25] Id. at 8.
[26] Id. at 7.
[27] Id. at 8.
[28] Id.

A.2d 192, 197 (Pa. Super. 2001). The Supreme Court has found that unprovoked flight in a high crime area is sufficient to establish reasonable suspicion. *See Commonwealth v. Jefferson*, 853 A.2d 404, 405 (Pa. Super. 2004) (citing *Illinois v. Wardlow*, 120 S.Ct. 673 (2000)).

Observations, Appellant's presence in a high-crime area coupled with his failure to respond to police, a firearm, and unprovoked flight provided Officer Lutz with reasonable suspicion. Appellant's unprovoked flight alone does not provide reasonable suspicion, however, when the flight is in a high-crime area, reasonable suspicion can be established.

Officer Lutz observed the bulge in Appellants waistband, indicative of a firearm.[29] When Officer Lutz asked Appellant if he had a license to carry a firearm, he remained silent but looked at his waistband and then back up to the officer.[30] Because he did not answer, Officer Lutz went to exit the vehicle but before he could the Appellant grabbed his waistband and fled.[31] Officer Lutz's observations of Appellant's waistband bulge, his furtive eye movements, and his action of grabbing his waistband all reinforced Officer Lutz's reasonable suspicion.

Considering the totality of the circumstances surrounding Appellant's arrest, reasonable suspicion emerged, allowing Officer Lutz to elevate a mere encounter to an attempted investigative detention. The addition of flight and subsequent discovery of the firearm lead to probable cause. The firearm was properly recovered and thus not fruit of the poisonous tree. Therefore, this courts order denying suppression of evidence should be upheld.

**II.     This Court did not abuse its discretion when it sentenced Appellant to a legal sentence that aligned with the sentencing guidelines.**

This Court was well within its discretion when it imposed a legal sentence that aligned with the sentencing guidelines. The sentence was not manifestly excessive and nothing in the record points to the contrary.

An abuse of discretion is more than an error in judgment. *See Commonwealth v. Starr*, 234 A.3d 755, 760-61 (Pa. Super. 2020); *Commonwealth v. Clarke*, 70 A.3d 1281, 1287 (Pa. Super. 2013). "An abuse of discretion may not be found merely because an appellate court might have

---

[29] *Id.* at 9.
[30] *Id.* at 10.
[31] *Id.* at 8, 35-36.

reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice[,] bias or ill-will, or such a lack of support as to be clearly erroneous" *Commonwealth v. Walls*, 926 A.2d 957, 961 (Pa. 2007); *see Commonwealth v. Rodda*, 723 A.2d 212, 214 (Pa. Super. 1999) (en banc); *Commonwealth v. Smith*, 699 A.2d 1008, 1011 (Pa. Super. 1996). The rationale behind such broad discretion and the concomitantly deferential standard of appellate review is that the sentencing court is "in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstance before it." *Commonwealth v. Ward*, 568 A.2d 1242, 1243 (Pa. 1990).

"In reviewing a record to determine if the sentencing court abused its discretion, the Sentencing Code instructs the [Pennsylvania Superior Court] to consider the nature and circumstances of the crime; the history and characteristics of the defendant; the sentencing court's findings as well as the court's opportunity to observe the defendant, including through presentence investigation; and the sentencing guidelines." *Commonwealth v. Velez*, 273 A.3d 6, 10 (Pa. Super. 2022) (citing 42 Pa.C.S.A. § 9781(d)). Further when imposing a sentence, the court must follow the general principle that the sentence be "consistent with the protection of public, the gravity of the offense as it relates to the impact on the life of the victim and community, and the rehabilitative needs of the defendant." 42 Pa.C.S.A. § 9721(b). The balancing of these Section 9721(b) sentencing factors is within the sole province of the sentencing court. *Velez*, 273 A.3d at 10 (citing *Commonwealth v. Lekka*, 210 A.3d 343, 353 (Pa. Super. 2019)).

The sentencing court must also consider the sentencing guidelines when sentencing a defendant. *See* 42 Pa.C.S.A. § 9721(b). Although, the guidelines are purely advisory in nature, and they are not mandatory. *See Commonwealth v. Yuhasz*, 923 A.2d 1111, 1118 (Pa. 2007). A sentencing court may use its discretion and issue a sentence outside the guidelines, so long as the sentence does not exceed the maximum sentence allowed by statute. *See id.* at 1118-19. First-degree felonies are punishable by up to twenty years in prison. 18 Pa.C.S. § 1103(1). When a court deviates from the sentencing guidelines, it must state the reasons for doing so on the record. *See Commonwealth v. McLaine*, 150 A.3d 70, 76 (Pa. Super. 2016).

"Further, the weight accorded to the mitigating factors or aggravating factors presented to the sentencing court is within the court's exclusive domain." *Velez*, 273 A.3d at 10 (citing *Commonwealth v. Chilquist*, 548 A.2d 272, 274 (Pa. Super. 1988). The Pennsylvania Superior Court has found that if a court possesses a pre-sentence report, it is presumed the court "was aware

of and weighed all relevant information contained [in the report] along with any mitigating sentencing factors." *Commonwealth v. Marts*, 889 A.2d 608, 615 (Pa. Super. 2005) (citation omitted).

Following the Sentencing Guidelines, 204 Pa. Code § 303.1 et seq., at the time of Appellant's sentencing, he had a prior record score of five.[32] Pursuant to the Sentencing Guidelines, one count of Possession of Firearm Prohibited, graded as a first-degree felony, has an offense gravity score of eleven.[33] This would make the applicable sentencing guidelines, seventy-two to ninety months of incarceration plus or minus twelve months for aggravation or mitigation.[34]

One count of Firearm Carried Without a License, graded as a third-degree felony, has an offense gravity score of nine.[35] This would make the applicable sentencing guidelines, twenty-seven to thirty-three years of incarceration plus or minus nine months for aggravation or mitigation.[36]

Finally, one count of Carry a Firearm in Public in Philadelphia, graded as a first-degree misdemeanor, as an offense gravity score of four.[37] This would make the applicable sentencing guidelines, twelve to eighteen years of incarceration plus or minus nine months for aggravation or mitigation.[38]

There is nothing in the record that can be construed as partiality, prejudice, bias or ill-will. Nor has Appellant pointed to anything that could be construed as such. At the sentencing hearing, the Commonwealth asked this Court to sentence Appellant to five to ten years of incarceration followed by six years of probation.[39] The Appellant requested a mitigated county sentence.[40] In considering all the mitigation presented at the sentencing, the Court imposed a sentence of five to ten year of incarceration followed by one year of re-entry supervision.[41]

---

[32] 204 Pa. Code § 303.7 (7th Ed.).
[33] 204 Pa. Code § 303.3 (7th Ed.).
[34] 204 Pa. Code § 303.16 (7th Ed.).
[35] 204 Pa. Code § 303.3 (7th Ed.).
[36] 204 Pa. Code § 303.16 (7th Ed.).
[37] 204 Pa. Code § 303.3 (7th Ed.).
[38] 204 Pa. Code § 303.16 (7th Ed.).
[39] N.T. 7/12/24, at 13.
[40] *Id.* at 11.
[41] Secure Court Docket, at 9.

At sentencing this Court explained its consideration and reasoning for imposing the sentence:

> All right. I've taken into consideration the gravity of the offense, the need to provide protection to the community. I've taken into consideration the guidelines in this case, which for the record are 72 to 90 months plus or minus 12. I've taken into consideration the comments of the attorney for the Commonwealth, the comments of your attorney and your comments. I've taken into consideration the fact that you have family support in the room. But I cannot, I can't ignore the fact that your criminal history – I don't even know when you had a sustained period of non-criminal activity with the exception of the period of time when you were incarcerated. So I don't know how to stop you from committing crimes other than to lock you up. I really don't.[42]

Given the fact that this Court only imposed a sentence on the charge of Possession of Firearm Prohibited and the fact that it was mitigated, the record is simply devoid of any indication that the sentence was manifestly unreasonable or the product of partiality, prejudice, bias, malice, or ill-will. Therefore, the sentence of this Court should stand.

## CONCLUSION

For the foregoing reasons, the judgment of this Court should be affirmed.

BY THE COURT:

NATASHA TAYLOR-SMITH, J.

DATE:

_10·4·2 6_

[42] N.T. 7/12/24, at 16-17.